## George H. Williams *vs.* Charles J. Baker.

*Riparian Ownership:   Question as to such ownership between Reversioner and Leasehold owner, decided on the words of the Demise, in favor of the latter—Construction of the words of a Grant.*

By a lease, dated in 1850, for 99 years renewable forever, a riparian lot of ground in the city of Baltimore, running back to a wharf and the Port Warden's line, and bounding in the rear on said line, "together with all the improvements thereon made, lanes, alleys, ways, waters, privileges, appurtenances and advantages to the same belonging or in anywise appertaining," was leased to certain parties, whose title in a portion of the same came by *mesne* assignments to B.  In 1858, B. and the other leasehold owners of said lot, under an ordinance of the city and by virtue of the Act of 1745, ch. 9, extended the Port Warden's line two hundred and thirty feet further out into the water, and, by means of natural accretion and artificial deposits, filled up the said addition and used it for wharf and other purposes.  In 1872, W. purchased the reversion in the lot as originally leased, and soon afterwards brought an action of trespass *q. c. f.* against B. to test his title to the said addition and accretion.  Judgment being for B., on appeal, it was Held :

1st.  That, the lessors having at the date of the lease, the right under the Act of 1745, with the concurrence of the city authorities, to make the improvements in question, this right was by the lease, assigned to the lessees.

2nd.  That the language above quoted was comprehensive enough to convey to the lessee every right of enjoyment and possession, in or appurtenant to the ground leased which the lessor had; to be held and enjoyed by the lessee as long as he paid his rent and performed his covenants.

Appeal from the Superior Court of Baltimore City.

This was an action of trespass *quare clausum fregit*, submitted to the Court below, (Dobbin, J.,) upon a case stated. The facts are stated in the opinion of this Court.   Judg-

ment upon the case stated being for the defendant, the plaintiff appealed. .

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

[The points and citations of counsel, so far as touched upon in the opinion of the Court, are omitted.—REP.]

*George H. Williams*, for the appellant.

A lessee of property holds only a limited estate, marked by fixed lines, beyond which his estate and possession cannot go. He is under no obligation to pay an increased rent, nor could he be coerced to occupy anything beyond the courses and distances expressed in his lease, whilst he . is entitled to an abatement of rent, in proportion to any diminution of his quantity of land by any act of nature. There would be no mutuality in a contract which gave a lessee exemption by reason of diminution, and which would give the lessor no benefit from any increase. *Woodfall's Landl. and Ten.*, 363.

The lease in this case was by lines then known, fixed and well established, and there is nothing upon the face of the lease to show any obligation on the part of the lessor to keep the water there. In fact, that the water is not there, arises in great part from the tenant's own acts. This case differs entirely as to its facts, from the case of *The Mayor and C. C. of Balto.* vs. *White*, 2 *Gill*, 444, where the right to improve out into the water was expressly demised and granted.

Even if there were a covenant implied in the lease from its descriptive words, to keep water at the southern boundary of the lot, the appellee would not be entitled to claim the possession of any natural accretion, but his remedy, if any, would be upon the covenant, until the lessor should have restored it to its former plight. To permit him to

acquire any such right of possession, would be permitting the lessee to take advantage of his own wrong, a wrong which in some cases might be the destruction of the property.

The building out of the land, so to speak, was a trespass on the part of the lessee, and whatever improvement he so made, if it be such, must enure to the benefit of the appellant. *Mayor, &c. of Baltimore vs. McKim,* 3 *Bland,* 471–2.

The appellee could acquire no right to the prejudice of the rights of the appellant, or his grantor, by any ordinance of the City of Baltimore, because he was a party to it and it is *ultra vires* for the corporation to grant rights it does not possess. *Wilson vs. Inloes,* 11 *G. & J.,* 361; *Dugan vs. Mayor, &c. of Balto.,* 5 *G. & J.,* 368.

Nothing is "appertaining" or passes under the words "appurtenances," that is not essential to the enjoyment of the premises as demised. And in construing them, the words of the conveyance are alone to be considered. Nothing passes under the word "appurtenances," which would not equally pass without the word. *Woodfall's Landl. and Ten.,* 94, 95.

*E. H. Perkins, Jr.,* and *F. W. Brune,* for the appellee.

Under the lease, and by its express terms, the lessors assigned to their lessees and their assigns, all the rights or franchises to improve into the adjacent waters granted or recognized in the Acts of 1745 and 1862, which the lessors could have claimed and exercised if they had not executed said lease.

The owner of a fee simple estate is not the only riparian proprietor, entitled to improve under the Act of 1745. *Giraud vs. Hughes,* 1 *G. & J.,* 250, 252, 254, 255, 260, 265; *Casey's Lessee vs. Inloes,* 1 *Gill,* 497, 498, 499, 501, 502, 510, 511; *Mayor, &c. of Baltimore vs. White,* 2 *Gill,* 446, 447, 448, 456.

The Act of 1862 confirms this as the true construction of the Act of 1745; for the Act of 1862 provides that the

proprietor of land gaining accretions on navigable waters, shall hold them by the same right as if the water had not been navigable; and it will hardly be contended that a lease for ninety-nine years, renewable forever, of land, with the appurtenances, bounding on a stream not navigable, may not follow the receding water *usque ad medium filum aquæ.*

And in the second section, the accretions and exclusive right of improving on navigable waters, is not secured to the fee simple owner alone, but to the successive owners of the land to which they are attached "as incident to their respective estates." See *Art.* 99, *sec.* 21, *of the Code, and the Act of* 1835, *ch.* 168.

The owner of the leasehold and not of the reversion, is the owner or proprietor to assent to the opening or paving of streets, under the Acts and Ordinances on that subject. *Holland vs. Mayor, &c.,* 11 *Md.,* 186; *Mayor, &c. vs. Bouldin, &c.,* 23 *Md.,* 328.

The appellant, and those under whom he claims, by permitting the appellee and his co-lessee, to obtain the sanction of the city to their contemplated improvements, and by allowing them to incur expense in filling in the extension into the water, and in building wharves and other improvements without objection, is now estopped from treating the appellee as a trespasser in making such improvements, and from claiming them as his own. *Tongue's Lessee vs. Nutwell,* 17 *Md.,* 212; *Browne vs. Trustee, &c.,* 37 *Md.,* 122.

The appellant's right in the lot described must be as an improver under the Act of 1745, and he cannot be declared an improver, unless he sets up the acts of his tenants as valid. As reversioner in the original lot leased, he cannot claim a reversion in the accretions and improvements, without, at the same time recognizing the leasehold interest of the appellee in the same.

ROBINSON, J., delivered the opinion of the Court.

The appellee is the owner of a leasehold interest for a term of ninety-nine years renewable forever, in a lot of ground situated in the city of Baltimore, and lying on a branch of the Patapsco, known as Spring Gardens. Upon this lot there was at the date of the lease a wharf, extending to the Port Warden's line, which formed its southern boundary.

In 1858 the Messrs. Boyd and the appellee's firm, who then owned the entire leasehold interest in said lot, were authorized by an ordinance of the city of Baltimore, to extend the Port Warden's line two hundred and thirty feet further out into the water, and also to extend their wharf and other improvements over this lot, which was accomplished by means of natural accretion and artificial deposits, and have continued ever since to use the improvements thus made for business purposes.

In 1872 the appellant purchased the reversion in said lot subject to the leasehold interest of the appellee, and this suit is brought to try the question of title and possession of the accretion and of the artificial addition and embankment thus made.

The appellant contends,

1st. That being the owner of the fee he alone is entitled to the accretion of land, whether formed by natural or artificial causes ; and that the appellee being the owner of a mere leasehold interest in a lot described by fixed boundaries, has no right to use the accretion thus formed during the term.

2nd. That as owner of the fee he alone is entitled to make embankments or artificial improvements into the water.

That a riparian owner is entitled to the increase of soil formed by waters gradually or imperceptibly receding, is well settled law, and it is equally clear, we think, that the use of the accretion thus formed, may be assigned by

the riparian owner to a lessee for and during the term. Whether the use would pass to a lessee of a water lot demised by fixed boundaries, as a right incident to the lot itself, is a question not necessary to be decided in this case. Here the lessor not only assigned and conveyed to the lessees, for the term of ninety-nine years renewable forever, the lot in question; by fixed and ascertained boundaries, but also "all the improvements thereon made, lanes, alleys, waters, privileges, appurtenances and advantages to the same belonging or in anywise appertaining." That the lessor was entitled to the accretion by alluvion as a right incident and appurtenant to his ownership of the lot is conceded, and if so, the language used in this lease is certainly broad and comprehensive enough to convey to the lessee, "every right of enjoyment and possession in, or appurtenant to the ground leased which the lessor had, to be held and enjoyed by the lessee so long as he pays his rent and performs his covenants."

We do not agree with the counsel for the appellant, that under the Act of 1745, the owner of the fee is alone authorized to make improvements into the water in front of a riparian lot. In the case of the *City of Baltimore vs. White*, 2 *Gill*, 444, the right of the lessee to make the extension or improvement into the water was expressly recognized. There the lot was leased by the heirs of McElderry to Martin F. Maher, and the Court say,

"By the deed for the reversion to Robert and John Oliver, all the right, title and interest of the heirs of McElderry as well in the water lots demised to Martin F. Maher, as in the extension or improvements thereon, *which the lessee was authorized to make,* passed to said Olivers." In that case the right to make the extension it is true was assigned in express terms. Here the lessor does not say in so many words that the lessee shall have the right to improve out, but he does assign and convey all the ways, *waters, privileges, appurtenances* and *advantages belonging*

or in *anywise appertaining to the demised premises.* At the date of this lease, the lessors as owners of the lot bounding on the navigable waters of the Patapsco, had the right or privilege under the Act of 1745, of making, with the concurrence of the city authorities, wharves or other improvements into the water, and the language used in the lease is certainly broad enough to convey this right or privilege to the lessee during the running of the lease.

We have examined carefully *Harrison vs. Steritt,* 4 *H. & McH.,* 540 ; *Giraud vs. Hughes,* 1 *G. & J.,* 249 ; and *Casey's Lessee vs. Inloes, et al.,* 1 *Gill,* 511, and without extending this opinion by a review of these cases it is sufficient to say they are not in conflict with the views herein expressed.

For these reasons the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 5th March, 1875.)