JOHN ORRICK and URILLA, his Wife, and others *vs.*
CHARLES T. BOEHM, Trustee, and others.  GEORGE
W. GREENWAY, Administrator d. b. n., of ELIZA-
BETH GRIMES, and MALINDA BARTH *vs.* SAME.
THE AMERICAN COLONIZATION SOCIETY *vs.* SAME.
THE VESTRIES OF SALEM CHURCH IN BOONSBOROUGH
*vs.* SAME.

*Construction of a Will—Cumulative Legacies—Devise of Realty
in lieu of Dower only a devise for life—Equitable Conversion
of Realty into Personalty—When and for what purposes
Equitable Conversion presumed—Devise over of Realty being
void, descends to heir-at-law, and not to residuary legatee—
Equity Jurisdiction of Superior Court of Baltimore City—
Constitution of 1867.*

In the year 1843, G. S. died leaving a will executed August 31st, 1832, which
was admitted to probate May 13th, 1843, whereby he devised to his wife,
E. S., certain real estate, and gave to trustees to be invested for his wife
during her life $30,000.  It was further provided by said will that immedi-
ately after the death of said E. S., the wife of the testator, and the sale of
the real estate devised to said E. S. as aforesaid, the trustees should distri-
bute the capital in the following manner:  To Malinda Neff, $8000 on
interest during her life, and then to her heirs or assigns; to the children of
John Neff, $8000, in like manner; to Urilla Stonebraker, $5000, in like
manner; to certain charitable institutions, various amounts; and by the last
clause provided that if a balance should remain of real and personal estate,
after all sums should be paid and invested according to the provisions of said
will, it should be appropriated to the sole use of the American Colonization
Society.  The widow accepted the devises and bequests in lieu of her dower
and thirds, took possession of the realty and received the profits of the per-
sonalty; after her death, upon a bill filed in the Circuit Court of Baltimore
City for a construction of said will and directions in the application of
funds in the hands of the trustee, Malinda Barth, (*neé* Neff,) claimed a share

Orrick & Wife, *et al. vs.* Boehm, Trustee, *et al.* Greenway, &c. *vs.* Same. Am. Colo'n So'ty *vs.* Same. Vestries of Salem Church, &c. *vs.* Same.

in the $8000 bequeathed to the children of John Neff, of which she was one, in addition to the amount bequeathed to her by name. The executor of the widow claimed that the devise of the realty to her in lieu of her dower was a devise in fee. The American Colonization Society claimed that there was an equitable conversion of the realty devised to the widow into money, which together with the personalty, was first liable to the payment of valid legacies, the balance passing to it as residuary legatee. The heirs-at-law claimed that the legacies bequeathed to the various charitable institutions were void, that the American Colonization Society was not competent in law to receive the legacy bequeathed to it, and that the personalty and proceeds of sale of the realty devised to the widow in lieu of her dower, should be applied, first to the payment of valid legacies, and then the balance should be divided amongst the next of kin in the proportions to which they were by law respectively entitled. HELD:

1st. That whether Malinda Barth (*neé* Neff,) took under the will of the deceased the sum of eight thousand dollars only, as bequeathed to her by name, or in addition thereto, one-fourth of the sum of eight thousand dollars bequeathed to the children of John Neff, of which she was one, depended entirely upon the intention of the testator as manifested by the language he had used.

2nd. That the bequest of eight thousand dollars to Malinda was to her individually, by name; the bequest of eight thousand dollars to the children of John Neff was to a class of persons among whom equality was to be the rule of distribution, and each share was to be disposed of in the same manner as Malinda's. Malinda was taken out of the class, made the special object of bounty, and referred to as an example of the mode of investing the legacy bequeathed to the class.

3rd. That the words directing the mode of disposing of the legacy to the class excluded Malinda from all participation in it.

4th. That Malinda did not come within the rule laid down by the authorities that where two legacies of *unequal amounts* are given to the *same person in the same instrument*, the one is not merged in the other, but the latter shall be regarded as cumulative, and the legatee shall be entitled to both.

5th. That the devise of the real estate to the widow in lieu of her dower was not a devise in fee.

6th. That the injunction to pay and distribute the capital, immediately after the death of the testator's wife, addressed to the trustees, to whom the real estate had never been devised, conferred upon the trustees no power under

Orrick & Wife, *et al. vs.* Boehm, Trustee, *et al.* Greenway, &c. *vs.* Same. Am. Colo'n So'ty *vs.* Same. Vestries of Salem Church, &c. *vs.* Same.

the will to sell said real estate, and inasmuch as it was only by implication that an intention to sell said real estate could be raised, and that implication was not necessary to pay the pecuniary legacies directed to be paid, it would be contrary to the best considered authorities and the policy of the law, to construe the terms used as sufficient to create an equitable conversion of the real estate.

7th. That an equitable conversion is not to be presumed beyond the purposes of the will, or further than is necessary to gratify the several legacies and bequests, and when these fail or lapse there is a resulting trust in favor of the heir, unless there is a clear and manifest expression of the will of the testator to the contrary.

8th. That the pecuniary legacies bequeathed by said will in remainder after the termination of the estates for life, passed by virtue of the residuary clause to the American Colonization Society, but the real estate devolved upon the heirs-at-law, in accordance with the doctrine that in case of a devise over of land being void, the estate descends to the heirs-at-law of the testator, and not to the residuary devisee under the will.

In this case the appellant Urilla Orrick, (*neé* Stonebraker,) claimed a legacy of five thousand dollars, bequeathed to her by said will of G. S , but denied the jurisdiction of the Circuit Court of Baltimore City to construe said will and direct the application of proceeds in the hands of the trustee, on the ground that the Superior Court of Baltimore City was the proper *forum* for all proceedings concerning this trust, the trustee having been appointed by that Court before the re-organization of the judiciary by the Constitution of 1867. HELD :

1st. That this case having been prosecuted to a final decree in the Superior Court, there the authority and jurisdiction of that Court as a Court of equity ended, after the re-organization of the judiciary by the Constitution of 1867, whereby the Superior Court was divested of its jurisdiction in equity and the Circuit Court of said city was invested with exclusive jurisdiction in equity.

2nd. That whatever might have been the power and authority of the Superior Court to pass orders in this case prior to a final decree, it clearly had no authority to pass orders with a view to future litigation.

APPEALS from the Circuit Court of Baltimore City.

In the year 1843, a certain George Stonebraker, of Baltimore City, departed this life, having previously, on the

31st day of August, 1832, executed a last will and testament, which was duly admitted to probate in the Orphans' Court of Baltimore City, on the 13th day of May, 1843. The testator in and by said will devised and bequeathed to his wife Elizabeth, for her life, a certain house and lot in Baltimore City, designated as No. 42 Hanover street, and a small farm in Baltimore County, called " Whitehall," together with the sum of thirty thousand dollars, to be paid over by his executors, to a trustee or trustees to be appointed by them, with directions to said trustee or trustees to invest said fund, and pay the interest thereof to his said wife for life, and immediately after her death, to pay and distribute the capital (after the sale of the house on Hanover street, and farm called " Whitehall,") in the following manner :  To his niece, Malinda Neff, $8,000, on interest or annuity during her life, and then to her heirs or assigns.  To the children of his wife's brother, John Neff, $8,000, in like manner.  To his niece, Urilla Stonebraker, $5,000, in like manner.  To the Lutheran congregation of Boonsborough, Washington County, Maryland, $6,000, for certain purposes.  The balance of amount bequeathed to his said wife, the testator directed to be applied " for a second English Lutheran Church, to be located in the City of Baltimore, south from Pratt street, and west from Sharp street.  Provided this church should not be erected and completed for worship, within three years after this appropriation is made, then the American Colonization Society should enjoy the benefit thereof." And by subsequent clauses in his will, the testator made certain general devises and bequests, and among them one of $12,000 to John A. Bentz ; one of $5,000 for the use of " The Orphaline Society of Baltimore ;" one of $1,000 for the use of " The Humane Impartial Society of Baltimore ;" an annuity of $60 for life to his negro woman, Tilly ; and a like annuity for life to his negro woman,

Dolly. And by the last clause in his will, he declared that if a balance should remain of his real and personal estate, after all sums should be paid and invested according to the provisions of his will, it should be appropriated for the sole use of the American Colonization Society; with the understanding, however, that the legacies to his wife, and J. A. Bentz, and the annuities to the two negro women, Dolly and Tilly, should be paid first in full; all other bequests to be subject to deduction, if the estate should not hold out in full.

The widow accepted the devises and bequests, made in her favor in said last will and testament, in lieu of her dower and thirds, and went into possession of the real estate so devised to her, and received from her trustee the issues and profits of the money so bequeathed to her. She afterwards married a certain Grimes, who pre-deceased her, and she also died in November, 1874. At the time of her death, a certain Charles T. Boehm was her trustee, and in January, 1875, said trustee filed his bill in the Circuit Court of Baltimore City, asking for a construction of the said will of the said George Stonebraker, and for instructions from said Court as to how he should distribute the funds in his hands as trustee, among the several claimants. The claimants were a certain Urilla Stonebraker, who had intermarried with a certain John Orrick, Malinda Neff, daughter of the testator's wife's brother, John Neff, who had intermarried with a certain Barth, the executor of the widow of the testator, the heirs-at-law and next of kin of the testator; the American Colonization Society, and the Vestries of Salem Church in Boonsborough. After the filing of the said bill by the trustee, Boehm, asking for the construction of said will, several of the claimants aforesaid filed their bills in the Circuit Court of Baltimore City, to enforce the payment of the legacies claimed by them respectively, and all parties interested were made

defendants, and inasmuch as all the cases turned upon the proper construction of said will, they were all by order of the Court consolidated. The appellant, Orrick, claimed a legacy of five thousand dollars, under the second item of said will, but denied the jurisdiction of the Circuit Court of Baltimore City, to construe said will and direct the distribution of the proceeds in the hands of the trustee, on the ground that the Superior Court of Baltimore City was the proper forum for all proceedings concerning this trust, the trustee, Boehm, having been appointed by that Court before the re-organization of the Judiciary, by the Constitution of 1867. The appellant, Malinda Barth, (neê Neff,) claimed a legacy of eight thousand dollars, bequeathed to her by name, by the second item of said will, and also a share of eight thousand dollars bequeathed by said will to the children of John Neff, of which she was one, on the ground that said second legacy was cumulative. The executor of the testator's widow claimed that the devise of the house in the City of Baltimore, and the farm in Baltimore County, called "Whitehall," in lieu of her dower, was a devise in fee. The appellant, The American Colonization Society, claimed that under the second item of the will there was an equitable conversion of the realty devised to the widow into money, which, together with the thirty thousand dollars bequeathed to the widow, was to constitute the capital from which, after the death of the widow, the specific legacies were to be paid, and the balance passed over to the said American Colonization Society, as residuary legatee; or if there was no equitable conversion as aforesaid, yet the said real estate and the balance of the personalty after the payment of specific legacies, passed to it as residuary legatee and devisee under the twelfth item of the will. The appellants, the Vestries of Salem Church in Boonsborough, claimed as specific legatees; and the heirs-at-law and next of kin of the testator,

Orrick & Wife, *et al. vs.* Boehm, Trustee, *et al.*  Greenway, &c. *vs.* Same.
Am. Colo'n So'ty *vs.* Same.  Vestries of Salem Church, &c. *vs.* Same.

claimed that the legacies to the various churches and
benevolent associations by said will bequeathed were void,
that the American Colonization Society was not competent
in law to receive the property devised and bequeathed to
it, and that the proceeds of the sale of the real estate de-
vised to the widow in lieu of her dower and the thirty
thousand dollars, the profits and income whereof were
bequeathed to her for life, in lieu of her thirds, were appli-
cable to the payment of valid legacies, and then the bal-
ance should be distributed amongst the testator's heirs-at-
law and next of kin in the proportions to which they were
by law respectively entitled.

From the decree in these consolidated cases, construing
the various disputed clauses in said will, these appeals
were taken.   The American Colonization Society also took
an appeal from the order of consolidation.   The construc-
tion given by the decree to said disputed clauses, will suf-
ficiently appear in the opinion of this Court.

The cause was argued before BARTOL, C. J., BOWIE,
STEWART, ALVEY and ROBINSON, J., and submitted on brief
for the Vestries of Salem Church.

*Geo. Hawkins Williams,* for Malinda Barth, and George
W. Greenway, administrator *d. b. n.* of Elizabeth Grimes.

Charles T. Boehm, as trustee under the decree of the
Superior Court appointing him, had no standing in Court
to file his bills in this case.   The case in the Superior
Court, in which he was appointed, still remained, and
its jurisdiction was upheld by Art. 4, section 36, of the
Constitution, and as the officer of the Court he had no
right to do anything in regard to a trust fund under its
jurisdiction, without a special order of that Court for that
purpose.   The order for consolidation was therefore im-

proper, and the bills should have been dismissed.  *Brown vs. Wallace,* 4 *G. & J.*, 479.

The bequest to Malinda Barth is cumulative.  She takes $8000, and then a fourth of another bequest, as one of the children of John Neff.

This bequest is of two unequal amounts in the same paper.—This makes it cumulative unless it violates an intent to the contrary, plainly expressed on the face of the will.  In this will there is no such contrary intent.  2 *Williams' Executors,* 1289–90.

But for the words in the second clause of the will in parenthesis ("after the sale of house and lot on Hanover street, with the farm called Whitehall,") undeniably the widow, Elizabeth Stonebraker, who takes as purchaser in lieu of dower, would take a fee simple in the Hanover street property and Whitehall.

The payment over of the $30,000, is as to the point of time for such payment made to depend after a sale—it has no other connection with it whatever—it merely indicates a *punctum temporis* for such payment.  The proceeds of such sale (if, indeed, a sale be ordered by implication,) are not devised over to any one, and it is upon this ground that there is no devise over; the Court below, by its decree, gives these proceeds to the heirs, as if the testator to that extent had died intestate.

The effect of the decree is to strip a widow of a fee simple, because a sale of property is impliedly ordered in a parenthesis, with no devise of it over to any one else.

More nakedly stated, it is this, a widow purchasing by a surrender of her dower, has her fee simple reduced to a life estate by a sale impliedly ordered in a parenthesis, and without any devise over of the proceeds of such implied sale, and without the will indicating any purpose as to such sale.  No authority has been found for such a position, and the mere statement of the preposition is its

own refutation.   The $30,000 is declared to be a capital to be paid over after the death of the widow.   When? Why when this property is sold, that is all.   No direction to sell given to anybody ;—no disposition of the proceeds when sold; and the widow is to be *divested* of her fee simple by an implication.

*Julian I. Alexander* and *T. A. Linthicum,* for Orrick and wife and others.

The claim of the executor of the testator's widow is, that the devise of the house and lot on Hanover street, and the farm called Whitehall to the widow, was a devise to her in fee.

The terms of the devise of the realty and the bequest of the capital of $30,000, which latter is confessedly for life, are so coupled that the restriction applied to the latter must be extended to the former ; and the terms, "after sale of house and lot," &c., used in the clause, show plainly that the testator intended his widow to take a life estate in the realty.   The capital of $30,000 is to be distributed after the sale of the realty.   But this capital is to be distributed on the death of the widow.   Either, therefore, the sale of the realty is to take place according to the will, before the death of the widow, or upon her death ; but not the first, because the will does give her a life estate in the land ; therefore, the last, and the realty is to be sold when she dies—which is utterly inconsistent with a gift to her in fee.   *Hammond vs. Hammond,* 8 *G. & J.,* 436.

If the claim of the widow's executor is out of the way, then the question is in what way is the reversion of the realty disposed of under the will?   Although a sale of the realty, after the death of the widow, is mentioned in the will, yet there is no imperative direction to sell ; there are no trusts expressed in the will, to which the produce of

the real estate, if sold, is to be applied ; the purposes of the will can be subserved without a sale ; if such trusts or purposes are described in the will, they are illegal or void, or have otherwise failed ; there is no equity in any of the legatees named in the will to call for a sale—the reversion of the realty does not pass as part of the general residue under the twelfth clause—during the life of the widow it descended on the heirs of the testator, and is now their absolute property.

In the construction of wills, no doubt, the intention of the testator is to govern ; but that intention is not to be gathered by conjecture or speculation. We think the authorities will show that in this case, of all others, a disposition in words is required from the testator. *Baddeley vs. Leppingwell,* 3 *Burr.,* 1533 ; *Chapman vs. Brown,* 3 *Burr.,* 1634 ; *Fenn vs. Lowndes,* 4 *Burr.,* 2250 ; *Lomax vs. Holmden,* 1 *Ves.,* 294 ; *Pattison vs. Shaw,* 8 *Gill,* 46 ; *Shaw vs. Bull,* 12 *Mod.,* 593.

The Colonization Society claims, under the words, " the balance of this amount bequeathed to my dear wife, E. Stonebraker, (if a balance remaining after all other sums before mentioned are paid.") In the previous part of the second clause, he had given $30,000 to trustees for her life, and from and immediately after her decease, to invest upon good security and to pay and distribute the capital (after the sale of house and lot on Hanover street, with the farm called Whitehall,) in the following manner, &c., giving pecuniary legacies to the amount of $27,000 if they were all valid gifts, and then come the words, *the balance, if any, &c.* The term " capital " properly signifies money put out at interest or productively, *(Bouvier's Law Dict.,)* and there is a fund under the will of $30,000, answering precisely to that description.

The terms of the second clause are, therefore, literally gratified, by holding that the capital of $30,000 alone

passes to the legatees named in the second clause   But
the term "amount," in the clause, "amount bequeath to
my dear wife," &c., is either equivalent to and conver-
tible with the term "capital," or it is not.   If it is, then
as the term "bequeath to my dear wife," &c., is predicated
of the term "amount," it is also predicable of the term
"capital," and the clause may be read, "pay and distri-
bute the capital bequeathed to my dear wife," &c.   But
then the only "capital" bequeathed to his wife was
the $30,000.   The produce of the sale of the land was
never bequeathed to her, because the land was to be
specifically enjoyed by her during her life, and the sale
only to take effect after her death.   On the supposition
then of "capital" and "amount" being convertible terms,
it is clear that nothing but the pure personalty passes.   But
if the term "amount" is not equivalent to the term "capi-
tal," it is either of greater or less extent than capital; but
not the first, because then the "capital" could not include
the produce of the real estate, and the "capital" is all
that is to be distributed, and if the last, then "capital"
can only be greater than "amount" by including the
produce of the real estate, but then the Colonization Soci-
ety only takes the "amount," which is exclusive of the
produce of the real estate.   In the twelfth clause of the
will, the words "amount bequeathed to E. Stonebra-
ker," &c., are used and distinctly apply then only to the
$30,000.   Now, words occurring more than once in a will,
shall be presumed to be used in the same sense, unless a
contrary intention appear by the context, or unless the
words be applied to a different subject.   2 *Jarman's Pow-
ell on Devises, page* 8.   On the whole, then, we submit
that this case is directly within *Shaw vs. Bull,* 12 *Mod.,*
593, and the other cases cited.

But, besides this, the rule *noscitur a sociis* applies.   The
testator is giving pecuniary legacies all through the latter

part of the second clause.   But for the trust to sell, could there be a doubt that the reversion of the Hanover Street house and Whitehall did not pass?   *Walters vs. Walters*, 3 *H. & J.*, 201; *McChesney vs. Bruce*, 1 *Md.*, 344 ; *Wilkinson vs. Merryland*, *Cro. Car.*, 447, 450 ; *Doe vs. Rout*, 7 *Taunt.*, 79 ; *Cook vs. Jaggard*, *L. R.*, 1 *Ex.*, 125.

But it is argued for the Colonization Society, that the trust for sale makes all the difference ; that there is an imperative direction to sell, which works an equitable conversion of the reversion, out and out, into personalty, from the death of the testator ; and that the produce of the reversion, when sold, is distributable as personalty under the will, and goes under the clause " amount bequeath, &c., to my dear wife," to the Society as residuary legatee of personalty.   Is there, then, any conversion out and out ? and if there is, by whom is the sale to be made? We may conveniently take the latter question first, to get it out of the way ; assuming, which we deny, that a sale is necessary, except for partition.

If a sale of land is directed in a will, and no person is appointed to make the sale, a power to sell results by implication to the executors.   Assuming that a sale is imperative, we understand it to be conceded in the present case, that the sale is to be made by the administrator *de bonis non* of the testator, or else by a trustee appointed by this Court, and that the trustee of the capital of $30,000 mentioned in the will, has no right to make the sale.   But in truth the alternative is not between the administrator *d. b. n.*, and a trustee to be appointed by the Court, but between the former and the heirs-at-law of the testator.   It is only in the event of its being impossible, or inconvenient to procure the execution of the trusts for sale, and of a conveyance by the latter, that it could be suggested that the Court had the right of making the sale. The rule, as we have stated it, is laid down in *Magruder*

Orrick & Wife, *et al. vs.* Boehm, Trustee, *et al.* Greenway, &c. *vs.* Same. Am. Colo'n So'ty *vs.* Same. Vestries of Salem Church, &c. *vs.* Same.

*vs. Peter,* 11 *G. & J.,* 217; *Sugden on Powers,* 138; *Tylden vs. Hyde,* 2 *Sim. & Stu.,* 238.

The result is, that the conversion is assumed to be (1°) for purposes of the testator, which, (2°) to be carried out, must be expressed in the will, otherwise, the heir takes; and accordingly, the whole doctrine is admirably summed up by Mr. Cox, in his celebrated note to *Cruse vs. Barley,* 3 *P. Williams,* 22, which has been commended by so many eminent equity Judges, in this way,—"The several cases on this subject seem to depend upon the question whether the testator meant to give to the produce of the real estate, the quality of personalty *to all intents,* or only so far as respected the *particular purposes* of the will; for unless the testator has sufficiently declared his intention, not only that the realty shall be converted into personalty for the purposes of the will; but further, that the produce of the real estate shall be taken as personalty, whether such purposes take effect or not, so much of the real estate or the produce thereof as is not effectually disposed of by the will, at the time of the testator's death, (whether from the *silence* or the *inefficacy of the will itself,* or from subsequent lapse,) will result to the heir."

In *Tongue's Lessee vs. Nutwell,* 17 *Md.,* 212, it was decided that a void devise goes to the heir-at-law, and the cases we have cited show that the like is the rule where there is a trust to sell. If then, any of the legacies fail, the equity to convert against the heir is gone.

1st. As to the bequest to the Lutheran Congregation of Boonsborough.

This is a bequest *prima facie* to a fluctuating body, and bad. *Dashiell vs. Attorney-General,* 5 *H. & J.,* 1. In other clauses of the will, there are bequests to the Lutheran and German Reformed Congregations, &c., showing that when the testator made the bequest to the Lutheran Congregation alone, he made it intelligently. *Murphy vs. Dallam,* 1 *Bland,* 529.

'Orrick & Wife, *et al. vs.* Boehm, Trustee, *et al.* Greenway, &c. *vs.* Same. Am. Colo'n So'ty *vs* Same. Vestries of Salem Church, &c. *vs.* Same.

A devise of the proceeds of lands devised to be sold, to a charity or religious body is bad. It can take only land or personalty. *Incorporated Ch. Building Society vs. Coles,* 5 *De G., M. & G.,* 324.

The Act of 43 Geo. 3, ch. 108, authorized a gift to any person or body politic, of lands not exceeding five acres, or goods and chattels not exceeding £500 in value, for the purposes therein specified.

Held that the gift must be of specific lands for one or other of the specific purposes indicated in the Act, and a gift of the proceeds of land is not within the protection of the Act.

And this is approved in this country. *Leabrun vs. Leabrun,* 15 *Gratt.,* 423; *State vs. Millbank,* 2 *Harrington,* (*Del.,*) 18; nor can a division be made, and the personalty only be applied if the funds have actually become blended. *Brook vs. Badley, L. R.,* 3 *Ch. App.,* 672.

Again, the devise to the church for the use of the pastor is void. A devise to the pastor directly would be bad ; a devise to one in trust for him would be doing indirectly what is denounced by the law. *Co. Litt.,* 223 *b.* Besides, what pastor is intended is uncertain. There are no words to distinguish him. If the bequest had been to the *pastor for the time being,* that would have applied only to the pastor of the church at the testator's death ; the gift is wholly uncertain.

The bequest of the balance to be applied to the Second English Lutheran Church, is clearly void under the case of *Whittingham vs. Lindenhohl, Eq. Dec.* 1873, in the Circuit Court of Baltimore City.

Next, as to the gift to the American Colonization Society.

In what event does the Society take ? It is claimed that the realty is converted out and out, as of the testator's death in 1843 ; but it is clear that the conversion was not

to take place till the death of the widow, for the sale could not take place till then. *Carlyon vs. Truscott, L. R.,* 20 *Eq.,* 348. None of these legatees could have filed their bill in the widow's life-time to have the legacies raised. Then it is said that the legacy vested at the testator's death on the supposition still of a conversion at that time, and of the preceding legacies, and especially that to the Second English Lutheran Church, being void. But if so, there is still less reason to imply a trust for sale of the realty, because then there could be no doubt of the capital of $30,000 holding out. The bequest to the Colonization Society is a conditional contingent bequest only, and of course could not vest until the event occurred on which the gift was to take effect. If the preceding gifts to the Boons-borough Church, and to the Second English Lutheran Church are good, this would not be disputed; and *Heasman vs. Pearse, L. R.,* 7 *Ch.,* 275, shows that even when gifts are bad, they may yet be conclusive as to the construction of the will, and must be looked at to ascertain the testator's intention. The balance would, if the legacies were good, have to be applied, *i. e.,* paid to the Church, the gift being defeasible if the Church were not opened within three years from the time the balance was appropriated to the Church. The words rather show that the legacy was to be taken from the Church after it had had possession of it, than that the Society should take under circumstances in which the Church should never have had the legacy at all. Hence, the gift to the Society, is a contingent or executory limitation, after the appropriation of the legacy to the first taker, and not an alternative gift to take effect before or without the enjoyment of the legacy by the Church. But whether the prior gift is good or bad, makes very little difference, if the condition on which the Society is to take, fails by an event analogous to lapse in the life-time of the testator, as is here the case.

But the general rule is that a legacy charged on land does not vest till the time of payment. If a lapse or anything analogous to a lapse has occurred, the legacy sinks for the benefit of the heir; if not, still the Society can only take as of the time when the bequest becomes payable, or the assets are administered.

Again the gift to this Society is otherwise void for uncertainty, because the preceding gifts are void, and it can only be ascertained by the execution of these void purposes. *Linbrey vs. Gurr*, 6 *Madd.*, 151.

Finally, the Society cannot take lands, or the produce of lands under this will at all. Under the Act of 1830, ch. 189, certain persons were incorporated as the American Colonization Society. The will was made August 31st, 1832, and the gift in it to that Society of lands or the produce of lands, speaks as of its date, and was made to that Society incorporated under that Act. Then came the Act of 1836, ch. 274, which recited that the rights and interests of the Society had been *materially* impaired, and were likely to suffer further injury, by certain omissions on the part of the Society to give efficiency to said Act of 1830, ch. 189, and proceeded to incorporate a different set of persons, as the American Colonization Society, with the powers contained in the first section of the Act of 1830, ch. 189. The third section limits the amount of property which the Society may hold in the United States, and in Maryland, and an inquiry as to this is prayed in the bill, so that if the present gift would swell their property above the amount, it is void *in toto*. The fourth section repeals the Act of 1830, ch. 189, saving to " the persons incorporated by that Act, and to the American Colonization Society, all the rights and powers conferred by that Act, so far as the same may be necessary for the recovery, possession, holding or enjoyment of any property, real, personal or mixed, *chose in action* or franchise of any

description whatsoever, which may have been heretofore given, granted, devised or bequeathed to, or otherwise acquired by the said persons, or any of them, or to or by the American Colonization Society." The repeal of its charter of course put an end to the old Society, which was the Society mentioned in the will, and the repeal was in pursuance of the power reserved to the Legislature in the original Act to repeal that Act. But otherwise as the Society assented to the Act repealing its charter, that *dissolved* it. *Railroad vs. Canal,* 4 *G. & J.,* 1. But if a gift be made by will to A, who dies in the life of the testator, whereby the gift lapses, another person named A, shall never take it. Consequently, the present Colonization Society, not having been in existence at the date of the will, but being a new body created subsequently, can never take a gift to another corporation of the same name which was dissolved in the testator's life-time. The question is not whether, if there be a gift to a voluntary society, which is subsequently incorporated in the testator's life-time, that society may take upon his death, though it has never been held under the old law, as to wills speaking from their date where land is devised, that such a body could take a devise of lands, but whether a gift of land under the old law to one body corporate, which is dissolved in the testator's life-time, can be taken by a new corporation, which was not *in esse* when the will was made.

Under the fifth clause, we claim the gift to the Lutheran Congregation, the gift being void. It is said that the congregation holds now by adverse possession. But the congregation claims under the will, and it cannot at the same time claim differently. *Beall vs. Lynn,* 6 *H. & J.,* 336.

Under the ninth clause, we claim that the corporation

is ill-described, and that the defendant who claims the benefit of the devise cannot take.

Under the tenth clause, it is conceded that the devise is void, and the property therefore goes to the heirs-at-law.

*Arthur W. Machen* and *I. Nevett Steele*, for the American Colonization Society.

The question of most magnitude in this case is as to the operation of the will upon the pieces of property, described in the second clause as the house and lot No. 42 on Hanover street and the farm called "Whitehall," which in the life-time of the testator, constituted his town and country residences.

It is claimed, on behalf of the American Colonization Society, first, that under the provisions of the second clause there was an equitable conversion of these lands into money, which is to be added to the $30,000, and that the whole, as the entire capital of the bequest of which the usufruct was given to the widow for life, is applicable first to the specific legacies mentioned in this clause, or of such of them as are valid, and then as to all the residue, as a legacy to the American Colonization Society. And secondly, that if the second clause should not be held to dispose of the proceeds of the sale of the lands in question, the American Colonization Society is, at any rate, entitled to them, as residuary devisee and legatee, by virtue of the *twelfth* clause.

The heirs-at-law claim that the testator died *intestate* as to the fee of the said city lot and farm. They conceded that a life estate was given to the widow, and (as we understand) that a sale after her death was directed, but their contention is that no effectual disposition was made of the proceeds of such sale.

The widow took a life estate merely. The gift to her is evidently entire. The investment of the $30,000 re-

quired a special provision, which is interpolated, but the whole capital, "for her use during the time of her life," consisted of the house, farm, and $30,000 as invested.  If there were any room for doubt, it would be removed by the direction to sell at her death—a direction inconsistent with any larger estate in her than during her life.  *Smith vs. Smith, L. R.,* 5 *Chan.,* 345, *per* GIFFARD, L. J.

Words in a *parenthesis* are none the less entitled to be respected on that account.  *Mims vs. Armstrong,* 31 *Md.,* 98 ; *Weatherby vs. Mister,* 39 *Md.,* 620.

The second clause of the will makes an equitable conversion of the lands in question.  *Smithers vs. Hooper,* 23 *Md.,* 284, 285 ; *Hurtt vs. Fisher,* 1 *H. & G.,* 88, 96 ; *Carr vs. Ireland,* 4 *Md. Ch. Dec.,* 251 ; *Thomas vs. Wood,* 1 *Md. Ch. Dec.,* 296 ; *Craig vs. Leslie,* 3 *Wheat.,* 563 ; *Cropley vs. Cooper,* 19 *Wall.,* 174.

The gift in the second clause to the American Colonization Society is dependent simply upon the non-erection, or non-completion, within the prescribed period of time, of a second English Lutheran Church in Baltimore, south of Pratt street and west of Sharp street.

It is wholly immaterial whether the *alternative* limitation, in favor of such Church if so erected, was valid or invalid.  In the event which has happened, the valid gift to the Colonization Society takes effect.  *Goldsborough vs. Martin,* 41 *Md.,* 503, 504 ; *Woollen vs. Frick,* 38 *Md.,* 443 ; 1 *Jarman on Wills,* 266 to 270.

Probably the alternative gift for the erection of the church was void.  But, whether it was so or not, it is impossible to contend successfully either that *north* of Pratt street is the same as *south* of Pratt street, or that the perfectly sensible and legally operative gift to the Colonization Society should be disregarded.

Under the *residuary devise* in the twelfth clause the American Colonization Society is entitled to all the pro-

Orrick & Wife, *et al. vs.* Boehm, Trustee, *et al.* Greenway, &c. *vs.* Same.
Am. Colo'n So'ty *vs.* Same. Vestries of Salem Church, &c. *vs.* Same.

perty, real and personal, not otherwise disposed of; and there is no room for an intestacy as to the proceeds of the sale of the house and farm. *Barnum vs. McLaughlin*, 42 *Md.*, 311 ; 1 *Jarman on Wills*, 612, 613 *and* 627, 628 *and* 630 ; *Lloyd vs. Lloyd, L. R.,* 7 *Equity,* 458 ; *Attree vs. Attree, L. R.,* 11 *Equity,* 280 ; *Dobson vs. Bowness, L. R.,* 5 *Equity,* 404 ; *Banks vs. Phelan,* 4 *Barb., S. C.,* 80 ; *Mortimer vs. Hartley,* 8 *Exch.,* 62 ; *Griffith vs. Pruen,* 11 *Sim.,* 202 ; *Bromley vs. Wright,* 7 *Hare,* 334 ; *Chapman vs. Chapman, L. R.,* 4 *Chan. Div.,* 800.

As regards the construction of the second clause, we submit that no argument against the testator's intention to apply the proceeds of the sale of the farm and house, along with the proceeds of the investment of the $30,000, can be derived from the circumstance that the specified pecuniary legacies amount to a less sum than $30,000. In the first place, the testator might not be confident either that his estate would furnish the $30,000, or that, if it did supply it, that the investments made of that original sum would certainly not depreciate in the course of the lifetime of his widow, as they well might happen to do. Nor have we any means of knowing what amount he considered as an appropriate provision for the contemplated and unbuilt Second Lutheran Church. So far as any inference may be drawn from his expressed intention in regard to the Boonsborough Church, to which he assigned $6,000, though probably less in need of a considerable donation than a struggling new Church with a costly edifice to build, it would rather be in favor of a much larger sum than the supposed balance of $3000, arrived at by deducting the sum of the prior legacies from $30,000. It must be borne in mind also that in 1832, when the will was written, the small farm of 40 acres was certainly worth far less, and the Hanover street house probably considerably less, than their present market value.

Such of the specific legacies for charitable or other objects as are void pass to the American Colonization Society by virtue either of the second clause or of the twelfth clause. *Smithers vs. Hooper,* 23 *Md.,* 284, 285 ; *Deford vs. Deford,* 36 *Md.,* 168 ; *Durour vs. Motteux,* 1 *Ves. Sen.,* 320 ; *Spencer vs. Spencer,* L. R., 16 *Eq.,* 506 ; *Craig vs. Leslie,* 3 *Wheat.,* 563, 577.

There can be no doubt of the capacity of the American Colonization Society to take. *Acts of* 1830, *ch.* 189, and 1836, *ch.* 274.

Had there been no incorporation prior to the making of the will, that circumstance would be unimportant, if the body designed by the testator became incorporated before his will *took effect* by his death. *State, use of Trustees of M. E. Church vs. Warren,* 28 *Md.,* 354. This is true even of a devise of land ; for no statute was required to enable a testator to make a gift to a person not in being when the will was made. The reason of the common law rule regarding the *subject* of the devise has no application to the *object* of it.

The savings in the 4th section of the Act of 1836, ch. 274, would protect the gift if it were necessary to resort to them.

And upon that construction of the second clause, which we suppose to be the true one, the house and farm are converted into personalty, whether the proceeds are disposed of in that clause or not, and as money, the American Colonization Society was undoubtedly qualified to take them at the time of the death of the testator. *Durour vs. Motteux,* 1 *Ves. Sen.,* 320 ; *Spencer vs. Wilson,* L. R., 16 *Eq.,* 506.

In answer to the objection, rather fanciful than real, that it must be supposed that there are two American Colonization Societies, one of which only, to the exclusion of the other, was contemplated by the testator, it is only neces-

sary to refer to the recitals and provisions of the two Acts of Assembly in question: 1830, ch. 189, and 1836, ch. 274.

*Samuel D. Schmucker* and *George Whitelock*, for the Vestries of the Salem Church.

*Rufus W. Applegarth*, for the appellees, Mrs. Adams and Mrs. Scott.

BOWIE, J., delivered the opinion of the Court.

The claims of the several appellants arise out of the construction of the second, fifth, ninth and twelfth items, of the will of the testator, which is dated the thirty-first day of August, 1832, and was proved on the 13th of May, 1843, and admitted to record, in the office of the Register of Wills of Baltimore City.

After giving and bequeathing to his wife Elizabeth Stonebraker, the house and lot No. 42, on Hanover street, with all the furniture, etc.; also, a small farm called Whitehall, situated on the old Frederick Road, etc., the second item provides, " I also give and bequeath to my dear wife Elizabeth Stonebraker, the sum of thirty thousand dollars, to be paid over to a trustee, or trustees, to be appointed by my executors, which trustee, or trustees, shall place and continue the said sum of thirty thousand dollars, upon good security, and pay the interest and dividends thereof, as they may fall due, to my dear wife Elizabeth Stonebraker for her use, *during the term of her life ;* and from and immediately after her decease, pay and distribute the capital (after the sale of house and lot on Hanover street, with the farm called Whitehall,) in the following manner : " Her dear niece, Malinda Neff, eight thousand dollars on interest or annuity, during her life, from thence to her heirs or assigns, from one generation unto generation.

Also, eight thousand dollars, to her nephews, and nieces, children of her brother John Neff, the said eight thousand dollars, each child to have share and share alike, of this named sum, and to be disposed of same manner as Malinda Neff's; and five thousand dollars, to my dear niece Urilla Stonebraker, daughter—brother John Stonebraker, also to be disposed of same as Malinda Neff's; six thousand dollars to be vested in stock, or annuity for the use of the Lutheran Congregation of Boonsborough, Washington County, Maryland, the interest to be applied only for the payment of said congregation's pastor's salary, and be considered as permanent funds for the use of aforesaid congregation forever; the balance of this amount bequeathed to my dear wife, E. Stonebraker, if a balance remaining after all other sums before mentioned are paid, shall be applied for a second English Lutheran Church, to be located in the City of Baltimore, south from Pratt street, and west from Sharp street, provided this church will not be erected and completed for worship within three years after this appropriation is made, then the American Colonization Society shall enjoy the benefit thereof."

The third item bequeaths certain houses and lots in Baltimore and Boonsborough, Maryland, to his nephew, John A. Bentz; also, the sum of $12,000.

The fourth item, bequeaths certain houses and lots in Boonsborough, Washington County, Maryland, to the rightful heirs of his nephew, Samuel Bentz.

The fifth item is as follows: "I give and devise my house and lot of ground thereto belonging, situated in Boonsborough, Washington County, Maryland, (a white frame house formerly occupied by the Rev. Mr. Bacher,) to the Lutheran Congregation, for a parsonage house only, of said place."

The sixth item, is a bequest unto his niece, Catharine Harbaugh, of his one-half of a brick store, etc., in Middletown, Frederick County, Maryland; after her death,

the same to be transferred to her children, share and share alike.

The seventh item, bequeaths to the Orphaline Society of Baltimore, the sum of five thousand dollars, for the use of that institution.

The eighth item, bequeaths to the Humane Impartial Society of Baltimore, the sum of one thousand dollars, for the use of that institution.

The ninth item gives and devises the house and lot occupied by Mrs. Reynolds, in Boonsborough, Washington County, Maryland, to his black woman, "Tilly," (to whom he gave her freedom,) with sixty dollars yearly, during her life; after her decease, the said house and lot with the annuity of sixty dollars, for the sole use of the Lutheran and German Reformed Congregation of Funkstown, Washington County, Maryland.

The tenth item, bequeaths unto his black woman, Dolly, the interest of one thousand dollars during her life, and her freedom; after her death, the said amount to be permanent funds for the poor and destitute of Funkstown, Washington County, Maryland, said funds to be placed in the hands of the Vestry of the Lutheran and German Reformed Church of the aforesaid town.

The eleventh item. "All other colored servants, now my property, to have their freedom, when twenty-one years of age."

Twelfth item. "If a balance may remain of my real and personal estate after all sums are paid and invested, according to my desire and wishes from section three to twelve, the balance I wish to have appropriated and for the sole use of the American Colonization Society, though must be understood the amount in full bequeath— to E. Stonebraker, J. A. Bentz, and annuity to black women Tilly and Dolly, must be paid first, all other bequests subject to deduction if the estate should not hold out in full."

The thirteenth item authorizes his executors to appoint a trustee or trustees, who shall place the respective sums of money for the use of his black women, Tilly and Dolly, on interest or annuities, and pay over the sums named in the ninth and tenth. sections to them, half yearly ; also, authorizes his executors, if they think proper and for the benefit of his estate, to have *two* years after his death, to settle his worldly concerns and to. have " the privilege of renting real estate if it will bring six per cent. on a fair valuation ; (in this last real estate I am alluding to such real property not named in this instrument of writing.")

Lastly, he appoints his wife, his nephew John Bentz, his brother Gerard Stonebraker, and Elias Davis, executors of his will, "to see his intentions in respect to the residue of his estate are, and shall be strictly complied with."

It is apparent from the literal citations of the will which we have made, that the testator's intentions, however clear in his own mind, have been very obscurely and vaguely expressed. His heart was more cultivated than his understanding ; his designs were more liberal than his language ; his views, larger than he was competent to communicate.

A striking feature of this will is its abundant benevolence. His *wife*, her nephews and nieces ;—his brothers, his nephews, his servants, the congregations of Christians to which he belonged, or with which he had associated, the Orphaline and Humane Societies, and last, but not least, the American Colonization Society, seemed to be objects of his bounty.

It is to be very much lamented, that the last wishes of such a benefactor should be disappointed, or fall short of their mark because of the vagueness or obscurity of the language, in which they were uttered.

The law, has however no sympathy for the objects of testamentary dispositions, its sole province is to ascertain the

will, as far as it is expressed in conformity with its policy and its prescribed rules.

Taking the cases in the order in which they are presented on the record ;—on the appeal of Orrick and wife, it is insisted as a preliminary objection, that the trustee, Chas. T. Boehm, acting under the decree of the Superior Court appointing him, had no authority to file his bill in this case, that the order of consolidation was improper, and the bills should have been dismissed.

That the 36th section of Art. 4, of the Constitution of Maryland, upheld the jurisdiction of the Superior Court, where the case in which he was appointed trustee still remained, and as an officer of that Court he had no right to do any thing in regard to a trust fund under its jurisdiction, without a special order of that Court for that purpose.

It appears from the bill of the trustee, Chas. T. Boehm, and the answers of the several defendants, that a bill was filed in the Superior Court of Baltimore City in equity, by Elizabeth Stonebraker, widow of the deceased testator, and one of the executors, for the appointment of a trustee, as provided by the will. Under said proceeding, Gerard Stonebraker was appointed trustee, upon whose death Chas. G. Boehm was appointed trustee ; and upon the death of Charles G. Boehm, Charles T. Boehm, the appellee, was appointed trustee.

The powers of the trustee, appointed by the Superior Court in the case of *Stonebraker vs. Stonebraker* are not expressly set forth, but if appointed to execute a trust under the will, it was limited to the duties therein prescribed.

The case of Stonebraker was prosecuted to final decree and there the authority and jurisdiction of that Court as a Court of equity ceased. Upon the re-organization of the Judiciary, under the Constitution of 1867, the Superior

Court of Baltimore City was divested of its jurisdiction in equity, and the Circuit Court of Baltimore City was invested with exclusive jurisdiction in equity.  *Vide Constitution of Md., Art. 4, part IV, secs. 28, 29.*

Whatever might have been the power and authority of the Superior Court, to pass orders in the case of *Stonebraker vs. Stonebraker,* prior to a final decree, it clearly had no authority to pass orders with a view to future litigation.  It could not initiate proceedings for the purpose of deciding questions which had arisen, or might thereafter arise, as to the distribution of the assets under George Stonebraker's will.

But conceding for argument's sake, that the trustee, Charles T. Boehm, had no power to file his bill without the previous order of the Superior Court of which he was trustee, that Court had no power to protect him from being sued by the legatees of the said Stonebraker, or others, claiming as heirs-at-law and next of kin.

Being sued and made defendant in two separate and distinct bills, in the Circuit Court of Baltimore City, involving the same questions and claims arising out of the same instrument, it was his right and privilege, as a party defendant to those suits, to pray they might be consolidated. The Court below was therefore right, in our judgment, in passing the order consolidating the causes involving the construction of the testator's will.

The second question, arising upon the appeal of Orrick and wife, and those claiming under the widow of George Stonebraker, and the appeal of Malinda Barth, is whether Malinda Barth, (neé Neff,) takes under the will of the deceased, the sum of eight thousand dollars only, as bequeathed to her by name in the second clause or item of the will, or, in addition thereto, one-fourth of the sum of $8000, bequeathed in the next sentence of the same section of the will, to the children of John Neff.

This depends entirely upon the intention of the testator, as manifested by the language he has used.  It is conceded that Malinda Neff, (now Barth,) is one of the children of John Neff, and a niece of the testator's wife.  Immediately following the bequest of the testator to his wife, of the sum of $30,000, to be paid to a trustee, for investment, *the interest to be paid to her*, for her use during the term of her life ; the will directs " and from and immediately after her decease, pay and distribute the capital (after the sale, house and lot on Hanover street, with the farm called Whitehall,) in the following manner : her dear niece, Malinda Neff, eight thousand dollars, on interest or annuity during her life, from thence to her heirs or assigns, from one generation unto generation.  Also eight thousand dollars to her nephews and nieces, children of her brother, John Neff, the said eight thousand dollars each child to have share and share alike of this named sum, and to be disposed of same manner as Malinda Neff's ; and five thousand dollars to my dear niece, Urilla Stonebraker, daughter—brother John Stonebraker, also to be disposed of same as Malinda Neff's."

It is argued, that this bequest is of two unequal amounts in the same paper, and this makes it cumulative, unless it violates an intent to the contrary, plainly expressed on the face of the will, and in this will there is no such contrary intent ; for which position the appellants rely on 2 *Williams on Executors*, 1289—90.

That learned author says, " On this point, (whether a legacy is cumulative or not,) the intention of the testator is the rule of construction.  The cases in which this question arises, may be classed under two heads, 1st, where there is no evidence of the testator's intention apparent on the face of the will ; 2nd, where there is such internal evidence."  Under the 1st head, it is an established rule, " where two legacies of quantity of unequal amount are

given to the same person, in the same instrument, the one is not merged in the other, but the latter shall be regarded as cumulative, and the legatee is entitled to both.''

The appellant Malinda assumes in this case that the legacies are to the same person (which is the matter in question,) and secondly, that there is no internal evidence in the will to the contrary.

The bequest of the $8000 to Malinda Neff, in the first sentence of the bequest cited above, is to '' her dear niece, Malinda Neff,'' individually, by name; the second bequest of $8000, is to a class of persons, described as '' her nephews and nieces, children of her brother, John Neff,'' '' each child to have share and share alike of this named sum ''—among this class equality was to be the rule of distribution, and each share is to be disposed of *in the same manner as Malinda Neff's.*

'' Malinda '' is taken out of the class by the first sentence, and made the special object of bounty ; in the second, Malinda Neff is referred to as an example of the mode of investing the legacy bequeathed to the class.

The words directing the mode of disposing of the latter legacy, clearly exclude Malinda Neff from all participation in it.

There is therefore no ground for the assumption that Malinda Neff was intended to be included in the class of persons to whom the second sum of $8000 was bequeathed, but there is clear internal evidence to the contrary.

The appellant, Barth, does not come within the rule laid down by the authorities, that where two legacies of *unequal amounts* are given to the *same person in the same instrument*, the one is not merged in the other, but the latter shall be regarded as cumulative, and the legatee is entitled to both.

The third point presented by the appellants' brief on Orrick's appeal is, that the real estate described in the

second clause of the will, was devised to the widow in fee, and not for life.

The argument is, that the widow takes as a purchaser in fee, in lieu of her dower; that her fee simple is reduced to a life estate by a sale impliedly ordered in a parenthesis, and without any devise over of the proceeds of such implied sale, and without the will indicating any purpose as to such sale. It is said, " No authority has been found for such a position, and the mere statement of the proposition, is its own refutation."

It is true the law implies, unless it is expressed to the contrary, that a devise to a widow of real estate is in lieu of her dower; and imposes upon her the duty of electing within a limited time, whether she will take her thirds or abide by the will; but the statute nowhere declares such devise to a widow, shall necessarily pass an estate in fee.

No authority is cited to maintain that position. Devises and bequests to widows, are subject to the same rules of construction, as those to other persons. The language of the second section of the will, in this case, limits all the devises and bequests to Elizabeth Stonebraker, "*for her use during the term of her life.*" The pecuniary legacy of $30,000 is to be paid to trustees, to be placed on good security, the interest to be paid to Elizabeth Stonebraker, for her use during the term of her life; and from and immediately after decease, pay and distribute the capital (after the sale of house and lot on Hanover Street, with the farm called Whitehall,) in the following manner.

Could the sale of the real estate have been referred to as the contingency for the distribution of the capital, (whether that capital consisted of the money before bequeathed only, or that and the proceeds of the realty.) if the latter had been devised in fee to his widow? Such a presumption is too violent to be entertained.

The main question arising on the appeal of the American Colonization Society is, as to the effect of the will

upon the pieces of property described in the second clause of the will, "as the house and lot No. 42, on Hanover Street, and the farm called Whitehall."

This question is presented in two aspects, first, the disposition, if any, made of this property, by the second section or clause of the will, considered alone. Secondly, the operation of the twelfth or residuary clause of the will upon this property, if any, and if not disposed of by either of these clauses separately, whether it is effected by their joint operation.

We have already shown that, in our opinion, the house and lot, (No. 42 Hanover Street,) and the farm called Whitehall, were devised to the widow "during the term of her life" only. The words embraced in the sentence, "and from and immediately after her decease, pay and distribute the capital, (after the sale of house and lot on Hanover Street, with the farm called Whitehall,) in the following manner," are supposed to be broad enough, to amount to a direction to sell the real estate, and convert it into money, as a part of the capital, to be distributed pursuant to the preceding part of the sentence. It is insisted on behalf of the American Colonization Society, that the real estate was a part of the capital provided by the testator, for the support of the widow, and when he directed the capital to be distributed, he intended all the estate, real and personal, which had been previously bequeathed and devised for her use.

This interpretation, however plausible, is subject to one serious and apparently insuperable objection.

The injunction to pay and distribute the capital immediately after the widow's decease, was addressed to the trustees, to whom the thirty thousand dollars had been paid by the executors, to be invested for her use, and those entitled to it in remainder. But the real estate had never been devised to the trustees or any one, expressly,

beyond the life estate of the widow, and the trustees had no power under the will, to sell and convey that estate. It is only by implication, that an intention to sell the lot and farm can be raised, and that implication not being necessary to pay the several pecuniary legacies directed to be paid in the second item or clause of the will, it would, we think, be contrary to the best considered authorities, and policy of the law, to construe the terms used in that clause or section, as sufficient to create an equitable conversion of the real estate.

The power of sale in this case, not being necessary to pay the legacies mentioned in the second clause or section, no implied authority could have arisen under it, to convert the real estate into personalty.

No power, express or implied, is vested in the executors or trustees, in any subsequent clause of the will, to sell the real estate referred to.

In the twelfth item, it is declared, "If a balance may remain of my real and personal estate after all sums are paid and invested according to my desire and wishes from section three to twelve, the balance I wish to have appropriated for the sole use of the American Colonization Society."

The contingency mentioned in this clause, must arise before the bequest became operative. It could not create the contingency. The testator did not propose to create a balance, for the purpose of giving it to the Colonization Society. The residuary clause therefore, neither *per se* nor taken conjointly with the second or other sections of the will, absolutely converted the realty into personalty.

The principles which control the decision of this case, were most thoroughly discussed, and skilfully applied in the argument of Mr. Scott, in the case of *Ackroyd vs. Smithson*, before Lord Chancellor THURLOW, in 1780, and all the adjudications since made, have been more or less,

the application of the same rules, to the varying features of cases as they arose.

Theories of construction have been built upon these decisions, which almost amount to arbitrary rules.   Precedents have acquired the force of principles.

It would be an herculean task, to attempt to analyze and reconcile all the conflicting decisions in England and the United States.   The briefs of the opposing counsel show how numerous and various these decisions are, and how shadowy and subtle some of the distinctions.

The basis of all the decisions is, that the intent of the testator, is the great guide in determining the question, whether there has been an equitable conversion of the realty into personalty.

It is conceded that the general rule is, an equitable conversion is not to be presumed beyond the purposes of the will, or further than is necessary to gratify the several legacies and bequests, and when these fail, or lapse, that there is a resulting trust in favor of the heir, unless there is a clear and manifest expression of the will of the testator to the contrary.   These conclusions are concisely expressed in Cox's note to *Cruse vs. Bailey,* 3 *P. Wms.,* 22, he says, the several cases on this subject seem to depend upon this question—" *whether the testator meant to give to the produce of the real estate the quality of personalty, to all intents, or only so far as respected the particular purposes of the will?*" 1 *White and Tudor's Leading Cases in Equity,* 632, (*Edition of* 1852.)

An eminent elementary writer on wills, Mr. Jarman, declares this doctrine requires the following qualification : " But that every conversion, however absolute in terms, will be deemed to be a conversion for the purposes of the will only, unless the testator distinctly indicates an intention that it is, on the failure of those purposes, to prevail as between the persons on whom the law casts the real

and personal property of the intestate, namely, the heir and next of kin." 1 *Jarman on Wills*, 558, cited by *White and Tudor*, as above.

The rule of law with regard to the equitable conversion of real estate, we take to be, "that the heir-at-law must be effectually displaced, not by inference or implication, but there must be a clear, substantive and undeniable intent on the part of the testator to exclude him." *Amphlett vs. Parke*, 2 *Russ. & Mylne*, 221, cited in 1 *White and Tudor's Leading Cases*, 719.

We concur with the learned Judge below, in the conclusion, that the devises and bequests in favor of the Lutheran Congregation of Boonsborough, and the Second English Lutheran Church, to be located in Baltimore, in the second item of the will, and the devise in the fifth item, of a house and lot situated in Boonsborough, to the Lutheran Congregation for a parsonage house, and the devises in the ninth and tenth sections of the houses and lots, and annuity and interest after the death of Tilly and Dolly, respectively, for the use of the Lutheran German Reformed Congregation of Funkstown, and for the poor and destitute of Funkstown, are void, the said congregations and said poor, being incapable in law of taking such bequests. *Dashiell vs. Attorney-General*, 5 *H. & J.*, 392 ; *S. C.*, 6 *H. & J.*, 1 ; *State, use of the Trustees of the M. E. Church vs. Warren, et al.*, 28 *Md.*, 352, *et seq.*

The pecuniary legacies bequeathed by the above recited items, in remainder after the termination of the estates for life, will pass by virtue of the residuary clause to the American Colonization Society; but the real estate embraced in the same items or clauses will not, for the reasons above assigned, pass to the American Colonization Society, but will devolve upon the heirs-at-law, in pursuance of the well established doctrine referred to by the Court below, and recognized by this Court in the case of *Tongue's Lessee*

*vs. Nutwell,* 13 *Md.,* 415, viz., that in case of a devise of land over, being void, the estate descends to the heirs-at-law of the testator, and does not pass to the residuary devisee under the will. Perceiving no error in the decree below, the same will be affirmed.

*Decree affirmed.*

(Decided 26th June, 1878.)