MARY E. STAKE, Executrix, *vs.* HARRY H. MOB-, LEY et al.

*Equitable Conversion of Realty into Personalty—Invalidity of Mortgage by Devisee of Interest in Land Directed by Will to be Sold.*

When a testator manifests a clear intention that his real estate shall be sold and converted into money, it is in equity generally treated as so converted from the time of his death, in the absence of a provision in the will postponing the time of conversion.

In order to create such conversion it is not necessary that the direction to sell the real estate be imperative in terms.   If a power of sale be given and the provisions of the will cannot be carried out unless there be a sale, then the power to sell is equivalent to an express direction to sell, and the conversion takes place.

A mortgage by a devisee of his share in real estate, which was converted by the will into personal property because directed to be sold, is invalid and creates no lien on the land.

A testator, who left surviving him eight children, bequeathed five hundred dollars to a grandchild and directed that the balance of the estate

be divided share and share alike between his children. The will appointed executors with full power to sell and convey all the property real and personal. Testator's estate consisted of three parcels of land and personal property which latter was in itself insufficient to pay debts and the legacy. The real estate was not susceptible of equal division among the children and a sale was necessary for the purpose of paying the debts as well as for a division. *Held*, that the testator's intention was that his executors should sell all the real estate and divide the proceeds among his children after the payment of his debts, and that consequently the real estate will be treated in equity as personal property from the time of his death.

*Held*, further, that a mortgage by one of the testator's children conveying his interest in the real estate, executed before the sale thereof, creates no lien on the land because the mortgagor had no interest therein.

Appeal from the Circuit Court for Washington County (KEEDY, J.)

The cause was submitted to the Court on briefs by:

*C. A. Little*, for the appellant.

*J. O. Snyder*, for the appellees.

BOYD, J., delivered the opinion of the Court.

The principal question in this case is whether or not the provisions of the last will and testament of Joseph Hoover worked an equitable conversion of all his realty into personalty at the time of his death. He died in 1887 leaving surviving him eight children. On the 28th of August, 1888, Virginia T. Mobley, one of his daughters, and her husband, Harry H. Mobley, executed a mortgage to the late JUDGE EDWARD STAKE to secure the sum of five hundred and twelve dollars borrowed from him in which they "do grant unto the said Edward Stake all right, title, interest and estate in and to the following described property situate in Hagerstown, Maryland, known as the 'Hoover House,'" etc. She died in 1891, intestate, leaving her husband and one child, Cecelia M. Mobley, surviving her. On May 31st, 1905, William H. Armstrong filed a bill in equity in the Circuit Court for Washing-

ton County in which he alleged that he had purchased from the executors of Joseph Hoover the property known as the "Hoover House," and that the final account of the executors had been stated in the Orphans' Court of that county, whereby they distributed the proceeds of the sale of property purchased by him, distributing to Cecelia M. Mobley the share of her mother, although not yet paid to her, and ignored the mortgage to Edward Stake. The bill alleges that the mortgage was a lien on that share, and was a cloud upon the plaintiff's title, and prays the Court to construe the will, to direct the executors as to the proper and legal manner of distribution of the estate and that his title to the property may be relieved of the cloud resting upon it by reason of the mortgage.

The cause was heard on an agreed statement of facts and a decree was passed which declared; (1) that the will operated as an equitable conversion of the real estate left by Joseph Hoover into personalty, at the time of his death, and (2) that the mortgage to Edward Stake did not constitute a lien upon the property and was of no effect or validity as a mortgage lien upon said property, or any portion thereof. From that decree the executors of Edward Stake appealed.

As the will is short we will copy it as it appears in the record, omitting only the formal beginning and conclusion. It is as follows:

"*First.* After my debts and funeral charges *rf* paid I *bequeth* as follows.

Item I give and *bequeth* to my Grandchild Edman Canan five *hundre* dollars to be used for to *educate hin* and the *bal* of my *esstate* I divide *shar* and *shar* alike unto my children or my *hairs.*

And lastly I do hereby constitute and appoint my two sons George D. and Elder Hoover to be *ny* sole Executors with full power to sell and *cony* all *ny* property real *pursonal* and mixed *wich* I may die *posesed* of of this *ny* last *wil* and testament."

It is dated September 28th, 1886, and was duly executed. As it is the duty of the Court to endeavor to ascertain from

the will the intention of a testator, it is always unfortunate when one is drawn as this is, but we must construe it as we find it.    There is but little conflict between the authorities as to the general principles applicable to an equitable conversion by will, but the difficulty is in their application to particular cases.    When a testator manifests a clear and unmistakable intention that real property belonging to his estate shall be sold and converted into money, it is in equity generally treated as so converted *at the time of his death*, in the absence of some provision or expression in the will which contemplates a postponement of the time of conversion.    The general rule "that lands devised to be sold are thereby turned into money, and construed in equity as personal estate," was recognized by our predecessors many years ago, *Hurtt* v, *Fisher*, 1 H. & G. 88, and in *Thomas* v. *Wood*, 1 Md. Ch. 296, the Chancellor said: "In the eye of a Court of equity the will of the testator had converted the real into personal estate, and the actual conversion by a sale could not be necessary to give validity to rights founded upon the equitable principle."    That case has often been cited with approval by this Court.    There is generally little room for controversy when there are mandatory words directing the sale or giving the power of sale in imperative terms, as an absolute imperative direction to sell real property at all events will ordinarily work an immediate conversion.    We use the words "generally," "ordinarily," etc., advisedly in stating these rules as there may be exceptions owing to peculiar conditions—such for example when land is devised to be sold, and the proceeds of sale are directed to be paid upon a trust which is void, the land is not thereby converted into money: or when the purpose for which conversion is directed fails or is no longer necessary, as illustrated by the cases of *Rizer* v. *Perry*, 58 Md. 112; *Cronise* v. *Hardt*, 47 Md. 433; *Orrick* v. *Boehm*, 49 Md. 72, and others that might be cited.

In this will there is no *express* direction to sell, and the appellant contends that the intention of the testator to convert the realty into personalty cannot be gathered from the will,

and that brings us to the real question to be determined. The agreed statement shows that the debts, funeral expenses, costs of administration and the legacy to the grandchild far exceeded the personal estate of the testator, and that in order to pay them it was necessary to sell a part of the real estate. One lot was sold by the executors in 1887 for three hundred dollars, another in that year for thirty-five hundred and ten dollars. After the sale of those properties the debts, funeral expenses, costs and legacy were paid in full and a balance of $59.10 distributed. The sale of the "Hoover House" was not made until recently—seventeen or eighteen years after the death of the testator. There was then no necessity to sell it in order to pay the debts, etc., and the question is whether the will manifested a clear and unequivocal intention of the testator to have *all* his real estate sold and converted into money, for any purpose.

It would be going quite far to lay much stress on the expression used by the testator, "I *bequcath* as follows," for we cannot fail to see that whoever drew the will was not learned in the law, and hence it would not be an altogether fair inference that the testator necessarily meant by that term to treat all of his estate as personalty. But the fact remains that he did use a term that ordinarily refers to personal property, and hence it at least does not conflict with any other part of the will that might seem to treat the estate as personalty. The testator left eight children and his property consisted of less than a thousand dollars of personalty, and the three parcels of real estate—the two previously sold and the "Hoover House." We do not find in the record what the latter sold for, but it was evidently worth much more than either of the others. The testator knew that some part of his real estate would have to be sold to pay his debts, funeral expenses and the legacy, and he also knew that the real estate could not be divided into eight parts. He could of course have left his real estate to his eight children as tenants in common, but he said (disregarding the spelling in the will) "and the balance of my estate I *divide* share and share alike unto my children or their heirs."

"To divide is to separate and bestow in shares; to part an entire thing; to make partition of among a number." 9 *Am. & Eng. Ency, of Law*, 678. He evidently did not mean to simply give the balance of his estate to his children as tenants in common, but expressed his intention of *dividing* it so that each one would have his share—or to follow the above definition "to separate and bestow in shares" or "to make partition of" it among his children. If that was all, his intention might be said to be still in doubt. But he gave his executors (again correcting the spelling) "full power to sell and convey *all* my property, real, personal and mixed which I may die possessed of"—not power to sell a part or so much as was necessary to pay his debts, etc., but *all* of it. Why give them power to sell all of it if not for the purpose declared in the item just preceding that clause —so as to divide it between his children? It would seem therefore that the only way to carry out the intention of the testator was to sell *all* his real and personal property, pay his debts, funeral charges, costs of admintration, other expenses and the legacy, and then divide the balance between his children. It may be suggested that he meant "devise" instead of "divide," but if he did, he did not say so, and it would be substituting a word which would have an entirely different effect from the one he used, without any reason shown in the will for doing so. He did not use the word "devise" any place in his will, although he did use "bequeth," and if we substituted that word it would make the testator devise his real estate to his children in one clause of the will, and in the one immediately following it authorize his executors to sell it. Unless we do make the substitution suggested above, which we do not feel justified in doing, there is no devise of the remaining real estate, as such. But when we take the whole will into consideration we see what seems to us to be a clear manifestation of the testator's intention—that the executors should sell all the real estate and divide the proceeds between his children, after the payment of debts, etc.

In *Paisley* v. *Holzshu*, 83 Md. 325, where it was held that

land had been converted into money under the provisions of a deed of trust, this Court said of the grantor, "He also mentions the payment of certain gifts, and then directs that the balance remaining shall be *divided* into seven equal shares. To execute his wishes, and accomplish his poorly expressed purposes as contained in said deed, would be a legal impossibility without a conversion." That is strikingly applicable to this case.

In 2 *Am. & Eng. Dec. in Eq.*, 86, in the notes to Ingersoll's estate, there is an excellent discussion of the subject of equitable conversion by will, and a large number of authorities are cited including many of our own decisions. After discussing this subject under various heads and speaking of a discretionary power of sale, it is said on page 90. "The discretion, however, to prevent conversion, must be *as to the fact of sale*, so that it is optional with the executor or trustee whether he will sell or not ; if a sale is contemplated at all events, there will be a conversion, though the time and the manner of sale are left entirely to the pleasure of the executor," and after citing authorities for that the annotator adds : "and if a will contains only a discretionary power of sale, but its provisions cannot be carried out without a sale, the direction to sell will be held to be absolute, and will work an out-and-out conversion of the realty, at the time of the testator's death." So in 9 *Cyc.*, 832, it is said "the intention to convert may be implied, as where a testator authorized his executors to sell his real estate, and it is apparent from the general provisions of the will that he intended such estate to be sold, although the power of sale is not in terms imperative." And this Court in *Paisley* v. *Holzshu, supra,* quoted with approval from 3 *Pomeroy's Eq. Jur.*, sec. 1160, where the principle is thus stated : "It is not essential however that the direction should be *express* in order to be imperative ; it may be necessarily implied. * * * In fact the whole result depends upon the intention. If by express language, or by a reasonable construction of all its terms, the instrument shows an intention that the original form of the property shall be changed, then a conversion necessarily takes

place." In 7 *Am. & Eng. Ency. of Law*, 466, after having stated that the question of conversion is to be determined from the intention of the testator as manifested by the provisions in the will, it is said : "Such intention may be shown by either (1) a positive direction for a conversion ; or (2) an absolute necessity to sell in order to carry out the provisions of the will, the conversion arising on the theory that the testator must have intended that everything essential to his scheme should be done; or (3) such a blending of the real and personal estate by the testator in his will as clearly to show that he intended to create a fund out of both real and personal estate and to bequeath the fund as money."

It seems clear from these authorities that when, in order to carry out the intention of the testator as shown by the provisions of the will, it is necessary to sell real estate a conversion takes place, although the testator only gave the executor a power of sale and did not in *express* terms *direct* it, for "the necessity of a conversion of realty into personalty to accomplish the purposes expressed is equivalent to an imperative direction to convert, and effects an equitable converson." 9 *Cyc.*, 833. When there is an imperative direction to sell, unless the time is qualified in some way, the conversion takes place as from the death of the testator, as is well settled by the authorities, and it must be likewise so when the provisions are such as to *be equivalent* to an imperative direction to sell. We do not understand the cases of this State, such as *Cronise* v. *Hardt*, 47 Md. 433; *Orrick* v. *Boehn*, 49 Md. 72; *Keller* v. *Harper*, 64 Md. 74, and *Kennedy* v. *Dickey*, 99 Md. 295, to stand in the way of applying these doctrines to this case. In so far as they may in any wise appear to do so, it is because of the difference between the provisions of these wills and that of Joseph Hoover. Having determined that his intention was that the executors should sell all his property, real and personal, in order to divide the balance (after the payment of his debts, etc.), and that it was necessary to do so in order to carry out his intention, the power of sale under those circumstances is necessarily equivalent to an imperative direction, and must be gov-

erned by the principles of law in reference to conversion that would have been applicable if there had been an express direction to sell.

It is to be regretted that this conclusion makes the mortgage of JUDGE STAKE invalid as a lien on Mrs. Mobley's interest in the "Hoover House," but the case of *Early* v. *Dorsett*, 45 Md. 462, is decisive of the question. As shown above, this mortgage simply granted, "all right, title, interest and estate in and to the following described property," etc. In *Early* v. *Dorsett*, a decree was passed for the sale of real estate devised by a will, for the purpose of distribution amongst the devisees. Mr. Sasscer, *one of the devisees*, purchased the property and the sale was ratified, and before he had paid the the purchase money *in full* or had obtained a deed from the trustee he mortgaged the land to Early. He afterwards made default and a resale was made at the purchaser's risk. In passing on the question, after referring to the law in this State that when such a sale was ratified and the purchaser had complied with the terms of sale as provided by the decree, a mutation from realty to personalty was complete, it was held that Sasscer's share of the net proceeds of the original sale *as one of the distributees* was at the time the mortgage was executed a mere *chose in action* and not an interest in land, that it did not pass by the mortgage and was "simply a conveyance by way of mortgage of all his right, title and interest *in the land*, which he had purchased under the decree." JUDGE MILLER said the Court had examined it to see if it contained any terms capable of effecting an assignment of such share, but found nothing in it "which can operate as a conveyance or assignment of the mortgagor's interest in these proceeds." The language of this mortgage is similar to that in *Early* v. *Dorsett*.

As this bill was filed by a purchaser from the executors to remove the cloud on his title, and by our decision his title is relieved, it is not necessary, and would not in our opinion be proper to determine whether the executrix of JUDGE STAKE could have any relief in a direct proceeding, instituted for the purpose, against this fund; or whether it was necessary to

take out letters of administration on the estate of Mrs. Mobley (inasmuch as she entered into the covenant to pay the mortgage and was on the note, and at least to that extent was in debt) in order to pass her share to her husband and daughter. Such inquiries would involve the consideration of the Statute of Limitations and other questions which cannot properly now be determined, and would not be relevant to the issues raised by this bill and the answers. We only refer to them in order that it may be distinctly understood that we do not mean by this decision of the questions which are before us in any way preclude the executrix of JUDGE STAKE from any proceeding that may be open to her to reach this fund, if that be possible.

> *Decree affirmed, the appellant to pay the costs.*

(Decided December 7th, 1905.)