# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 18, 1907.

WILLIAM A. FISHER ET AL., EXECUTORS OF JAMES BOYCE, DECEASED,

VS.

THE KELSO HOME FOR ORPHANS OF THE METHODIST EPISCOPAL CHURCH ET AL.

---

*D. K. Este Fisher* for the executors.

*Joseph Packard, Jr.,* and *A. Morris Tyson* for Union Protestant Infirmary and Kelso Home.

*Charles E. Hill* and *John Philip Hill* for Home of the Aged and the Home of the Friendless.

*Vernon Cook* for John A. and W. W. Boyce.

*Thomas Hughes* and *Clifton Doll Benson* for Mrs. McLeod.

*George Dobbin Penniman* for Mrs. Post.

*J. B. Hall, Jr.,* for the children of James Boyce, Jr.

ELLIOTT, J.—

On the 16th of August, 1891, James Boyce departed this life, leaving his last will and testament, duly executed, by which, after directing the payment of his just debts and funeral expenses, he provided for four pecuniary legacies of five thousand ($5,000) dollars each, one to each of four charitable institutions, viz.: "The Kelso Home for Orphans of the Methodist Episcopal Church," "The Home of the Aged of the Methodist Episcopal Church of Baltimore City," "The Union Protestant Infirmary of the City of Baltimore," and "The Home of the Friendless," directing that these legacies should not be paid for four years, unless his executors should think proper to pay the same sooner.

Then, after providing for the payment of various legacies with which we are not at present concerned, the testator says: "It is my will that all the rest, residue and remainder of my estate, real and personal, situate in the State of Maryland, and in other States, shall be divided by my executors into six parts, and all sums which have been charged by me, or by my authority, on any of my books of account, or memoranda, against any of my children, or which may appear on memoranda made by me, and not yet entered into my books of account, shall be treated as parts of my estate, and the charges against each child shall be divided and treated as parts of the share of my estate set apart to such child, or to trustees for her and her issue, it being my purpose, as far as practicable, thereby to promote equality in the benefits which my children have derived and shall derive from my estate." The will then proceeds to allot one of the said six parts to each of the testator's children, the sons taking absolutely, and trustees being appointed for the daughters' shares.

The will concludes with the appointment of the testator's three sons and his counsel, the late Judge William A. Fisher, as executors, as to whom the testator says, "And I confer upon my executors power to complete any contracts into which I may have entered, and to make sale, without ap-

plication to any Orphans' Court or other court, of my real estate, or to lease the same for terms of ninety-nine years, renewable forever, or for shorter terms, and to sell the reversions and ground rents, and to expend such sums as they may deem expedient in opening roads or other development of my real estate with a view to rendering it more valuable, and make such sales and leases, not only for the purpose of paying my debts, but to enable them to make the division into six parts as hereinbefore provided, it being contemplated by me that they will sell my real estate, though not with undue haste."

On January 8th, 1892, William A. Fisher, John A. Boyce and William Wheeler Boyce, three of the executors appointed by the will, the fourth one, James Boyce, Jr., having renounced, filed their bill of complaint in this court praying it to assume jurisdiction and direct the administration of the estate, construing the meaning and effect of the provisions of the will and codicil of the testator, and for such other and further relief as the case might require. All the various parties interested under the will were made parties to the bill, and on March 26, 1892, this court, by its decree then passed, assumed jurisdiction and direction as prayed, since which time the administration of said estate has proceeded herein.

On February 13, 1906, William W. Boyce, the only remaining executor of the four appointed by the will, and D. K. Este Fisher, appointed in accordance with the provisions of the will, by William A. Fisher, one of the original executors, filed their supplemental bill of complaint in this cause, alleging among other things that they had sold all the personal estate of the late James Boyce, except certain shares of stock which are unsalable, and all his real estate, except about 200 acres of land in Baltimore county called Kamila Park, and after having paid all his debts, charged themselves with the cash sum of $64,577.76, and said 200 acres of land.

After praying that certain additional persons may be made parties to this cause, the supplemental bill then proceeds to ask that this court shall now determine all questions in controversy touching the respective rights of the pecuniary legatees and devisees, and

as incident to the latter to decide as to the right of the executors to sell the remaining 200 acres of land, and ascertain the amount of the charges to be made against the testator's different children as provided in his will.

It is under the circumstances set out above, that this court is called upon to render its decision upon the matters referred to it, as to which the various parties are in dispute, the one with the other, and which this court must decide in accordance with the law and the facts as it shall find them.

Taking up these matters in logical order, we come first to the pecuniary legacies, and the question that we are called upon to answer is: Are these legacies defeated by the admitted insufficiency of the testator's personal estate to pay his debts and these legacies? Or, have these pecuniary legacies been so far made a charge upon the real estate of the testator as to require their payment before any portion of said real estate, or its proceeds upon its sale, shall go to his devisees?

In considering and deciding upon this question, without undertaking any exhaustive discussion of this subject, I need only refer to the most recently decided case in Maryland upon the subject of the equitable conversion of realty into personalty and the consequent effect of such conversion upon the payment of legacies where the personalty is admittedly insufficient.

The whole matter is elaborately and clearly discussed and decided in the case of Stake vs. Mobley, 102 Md., 408.

In this case our Court of Appeals, in its opinion delivered by Judge Boyd, say:

"When a testator manifests a clear and unmistakable intention that real property belonging to his estate shall be sold and converted into money, it is in equity generally treated as so converted at the time of his death, in the absence of some provision or expression in the will which contemplates a postponement of the time of conversion."

Upon the point as to what indicates such an intention on the part of a testator, the court quotes with approval, as follows:

"Such intention may be shown by either (1) a positive direction for a conversion; or (2) an absolute neces-

sity to sell in order to carry out the provisions of the will, the conversion arising on the theory that the testator must have intended that everything essential to his scheme should be done; or (3) such a blending of the real and personal estate, by the testator in his will as clearly to show that he intended to create a fund out of both real and personal estate, and to bequeath the fund as money."

Judge Boyd says further, in respect to the particular will which he was then construing: "Having determined that his intention was that the executors should sell all his property, real and personal, in order to divide the balance (after the payment of his debts, &c.), and that it was necessary to do so in order to carry out his intention, the power of sale under those circumstances is necessarily equivalent to an imperative direction, and must be governed by the principles of law in reference to conversion that would have been applicable if there had been an express direction to sell." Ṣtake vs. Mobley, 102 Md., 411, 415-416.

Applying the principles laid down by Judge Boyd, let us examine the will of James Boyce.

I have already quoted from it the words in which he conferred upon his executors the power to sell his estate, real and personal. In them we find not only the power and discretion with which he clothed his executors, but also the extent and the purpose to which and for which these were given. In an earlier part of his will James Boyce says: "Inasmuch as I shall hereafter give to my executors power to sell or lease all my real estate and personal estate, and I do not desire that said charges shall interfere with such sales and the conveyance and transfer by the executors to the purchasers or lessees of the complete and unencumbered title of such parts of the property as they may sell or lease or dispose of, it is my will, &c."

And again: "It is my will that all the foregoing bequests shall be paid free of collateral inheritance or other taxes, which shall be defrayed from my estate."

I take it that the provisions quoted show clearly that it was the expectation and intention of James Boyce, the testator, that all his estate, real and personal, should be reduced by his executors into cash, and the cash disposed of and distributed as provided. This being true, the title to none of his residuary estate became vested in anyone other than his executors, and it went to them not only with the power of sale, but for the purpose of sale. And it is an interesting and pertinent fact that none of the legacies under the will were made immediately payable, but the executors were given four years within which to pay them, there being the same provision with regard to the legacies to the charitable institutions and to the one for the benefit of his widow.

Surely, the power of sale in the will under discussion must be construed as an express direction to sell not only a part, but the whole of testator's estate, for 'the purpose of creating a blended fund out of which all the legacies should be paid, and the space of four years was given for the purpose of making the sales, without undue haste, as the testator had suggested.

I cannot avoid the conclusion that the pecuniary legacies were intended to be paid before any distribution among the residuary legatees. Moreover, they became due and payable four years after the grant of letters, and bear interest from that date, without any reduction by reason of the collateral inheritance tax.

What I have already said sufficiently indicates my opinion that the executors are fully clothed with the power to sell the 200 acres of land known as "Kalima Park."

The remaining question to be settled is as to the amounts to be charged against the different children of testator for advances made by him to them, and charged by him or by his authority against them.

In determining this matter we must have recourse to the will itself. The testator provided as follows: "And all the sums which have been charged by me, or by my authority, on * * * any of my books of account, or memoranda, against any of my children, or which may appear on memoranda made by me, and not yet entered into my books of account shall be treated as parts of my estate, and the charges against each child shall be divided and treated as parts of the share set apart to such child, or to trustees for her and her issue, it being my purpose as far as practicable, thereby to promote

equality in the benefits which my children have derived and shall derive from my estate."

It is to be noted that the sums to be charged are such as have been charged by the testator himself, or by his authority, and they are to be shown as so charged on memoranda made by him, or on his books of account.

The evidence in this cause shows that the testator had a number of memorandum books in which he entered various payments made by him to his children or for their benefit. In addition to these entries there were others entered in his business books kept at his place of business by others than himself, and it was doubtless these latter entries to which he referred when he used the words "or by my authority." There does not seem, therefore, to be any difficulty in deciding that whatever sums were charged, that is entered, on his private memorandum books, or on his business books against his children, are to be charged against them in the settlement of his estate.

The converse if this is true also that whatever was not charged against his children by him or by his authority, is not to be charged against them in the settlement of the estate. If the charges are by the testator the matter is plain, but when they are not made by him they must have been made by his authority, in order to be considered, and the authority must be clearly established.

The attempt has been made to show that certain charges made on the memorandum books and on the business books against certain sons-in-law were intended to be made against their wives, daughters of the testator, but the attempt must fail for a number of reasons.

In the first place, the charges appear originally against the sons-in-law, sometimes as memoranda, sometimes as items in formal accounts.

In the next place there is nothing to show any authority for the transfer from the husbands' accounts to those of the wives, except the testimony of two of the sons of the testator, who testify that their father expressed to them his intention of having that done and neither of them is a competent witness to prove such a fact.

A. A., 1904, Ch. 661; Bowman vs. Little, 101 Md., 276.

Even were the two sons competent to prove the intention of the testator in the regard mentioned, I should have great difficulty in believing that their self-interest has not induced them to state rather what they would like him to do than what they knew him to have done.

This is peculiarly true of the man who resigned his executorship while under an implied charge of trying to defraud the estate, and who in the testimony in this cause speaks slightingly of one of his sisters, and suggests that his father, for the bulk of whose estate he is now contending. used not only his own money, but also that of the corporations which he represented, in order to treat his daughter too liberally.

And the testimony of both of the sons is contradicted by William A. Worley, James Boyce's bookkeeper, who testified that the testator never did either transfer, or authorize him to transfer the sons-in-law accounts to their wives, and said that the transfers which were made were directed to be made by John A. Boyce.

I am, therefore, clearly of the opinion that in the division and distribution of the residuum of James Boyce's estate, the children are only to be charged with what was advanced to them personally, or for their personal account, and that the amounts set out in Exhibit G are to be altered by striking them from the totals all items originally charged against the sons-in-law.

I will sign a decree giving effect to the views expressed in the opinion.