JOHN A. BOYCE ET AL. *vs.* THE KELSO HOME ET AL.

*A Will Held to Operate as a Conversion of the Testator's Real Estate Into Personalty.*

After making certain bequests, a testator directed that the residue of his estate should be divided into six parts, and he devised and bequeathed one of said parts to each of his three sons absolutely, and devised and bequeathed the other three parts to trustees for the benefit of his three daughters for life. By the last clause of the will he empowered his executors to make sales and leases of the real estate, "not only for the

purpose of paying my debts but to enable them to make the division into six parts as hereinbefore provided. It being contemplated by me that they will sell my real estate, though not with undue haste." The testator left a large quantity of real estate as well as personalty. *Held*, that it appears from the general scope of the will that it was the intention of the testator that the executors should sell all of his real estate, and consequently the real estate was converted into personalty, and the proceeds of the sale of both the real and personal property constitute a blended fund for the payment of legacies and debts.

*Decided January 9th, 1908.*                o

Appeals from the Circuit Court of Baltimore City (EL-LIOTT, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Edgar H. Gans* and *Vernon Cook*, for John A. Boyce *et al.*, appellants.

*Joseph Packard, A. Morris Tyson* and *John Philip Hill* (with whom was *Chas. E. Hill* on the brief), for four charitable institutions, appellees.

*Thomas Hughes, J. Bannister Hall, Jr.*, and *Clifton Doll Benson* filed a brief for Catherine B. McLeod *et al.*, appellants.

*Frank E. Welsh, Jr.*, filed a brief for S. W. B. Hiss, one of the appellees.

WORTHINGTON, J., delivered the opinion of the Court.

James Boyce, of Baltimore County, died on the 16th day of August, in the year 1891, leaving a last will and testament, which was, after the death of the said decedent, admitted to probate by the Orphans' Court of said Baltimore County.

By the provisions of this will the testator, after directing the payment of his just debts and funeral charges, gave and bequeathed the sum of $5,000 to each of four charitable institutions, as follows:

To the Kelso Home for Orphans of the Methodist Episco-

pal Church, $5,000, to the Home of the Aged of the Methodist Episcopal Church, $5,000, to the Union Protestant Infirmary of the City of Baltimore, $5,000, and to the Home of the Friendless, $5,000. After some other bequests which do not concern this controversy, he bequeathed the sum of $2,000 to his son, William Wheeler Boyce, in trust for the use under certain conditions, of his grandson, Samuel Wheeler Boyce Hiss.

He directed that all these bequests be paid free of collateral inheritance or other tax, which taxes he requested should be paid from his estate. He then directed that all the rest, residue and remainder of his estate, real and personal, situate in the State of Maryland and in other States, should be divided by his executors into six parts. * * * "When said division shall have been made by my executors, I give, devise and bequeath one of such shares, to be designated by my executors, to my son, James Boyce, and another to my son, John A. Boyce, and another to my son, William Wheeler Boyce, all in their own right absolutely, respectively;" and he then gave, devised and bequeathed the other three shares to his three sons aforesaid, and to the survivor of them, in trust for the benefit of his three daughters: Amelia Stopford, Mary Elizabeth Post and Catharine Harrison, for and during their natural lives, respectively, etc." The last clause of the will was as follows: "Lastly: I constitute and appoint said three sons and my counsel, William A. Fisher, of Baltimore City, to be the executors of this my last will and testament, and I confer on my executors power to complete any contract into which I may have entered, and to make sale without application to any Orphans' or other Court, of my real estate, or to lease the same for terms of ninety-nine years, renewable forever, or for shorter terms, and to sell the reversions and ground rents, and to expend such sums as they may deem expedient in opening roads or other development of my real estate with a view to rendering it more saleable, and to make such sales and leases, not only for the purpose of paying my debts but to enable them to make the division into six parts

as hereinbefore provided; it being contemplated by me that they will sell my real estate though not with undue haste."

Mr. Boyce died leaving a large estate consisting of both real and personal property, and owing mortgage and other debts to a considerable amount.   In January, 1892, the executors named in the will, except his son, James Boyce, Jr., who renounced, filed a bill of complaint in the Circuit Court of Baltimore City, through ex-Judge William A. Fisher, as their solicitor, asking the Court to pass a decree construing the meaning and effect of all the provisions of said last will and testament, and empowering and directing the executors to administer the entire estate under the supervision and direction of that Court.   In the twelfth paragraph of the bill the executors suggested· to the Court what they were advised was the true construction of the provisions of the said last will, with reference to the sale of the real estate of said testator; their advice being, as they alleged, that such sale by the executors was mandatory and left them no discretion as to the necessity or propriety of selling said realty but only as to the time of doing so, and that the provisions of said will operated from the time of the death of the testator a conversion of all said realty into personalty and that the intention of the testator was to create a mixed fund composed of his personalty and of his realty, out of which his debts and pecuniary legacies were first to be paid; .with the further intention that the residue of said fund should be divided by his executors among his residuary legatees as in said will was directed.

Consent answers were filed to this bill by several of the adult parties in interest including John A. Boyce, William W. Boyce, Amelia Stopford, Mary E. Post and others, some of them acceding to the construction of the will suggested· in the bill of complaint and others submitting the proper construction thereof to the judgment of the Court.

Just what decree the Circuit Court passed pursuant to this bill and the answer thereto, does not appear by the record; but whatever it was it seems to have been acquiesced in by all the adult parties until the year 1905.   On the 14th day of

November, in that year, in pursuance of a previous order of Court, the auditor made a special report, in which he mentioned sixteen audits as having been already passed in the case, none of which, as by order of Court was directed, were to be reopened. In these audits the proceeds of the sale of both real and personal property had been used together as a blended or mixed fund, without question, so far as appears by the record.

On February 13th, 1906, a supplemental bill of complaint was filed by William W. Boyce, the surviving executor and D. K. Este Fisher, who was substituted in place of ex-Judge Fisher, deceased, setting forth that the estate had already been largely administered under the direction and supervision of the Court; all the debts having been paid and the only remaining assets to be disposed of being the sum of $64,577.76 and about 200 acres of land in Baltimore county; as to the administration of which the executors asked the further direction of the Court. The supplemental bill further stated that the four legacies to charities and the trust fund of $2,000 for the benefit of the testator's grandson, Samuel Whitfield Boyce Hiss, had not been paid because it was claimed on the part of the residuary legatees, that these charitable legacies and the trust fund, were payable only out of the proceeds of the sale of the personal estate of the decedent which as alleged was already exhausted, and that consequently these legacies had failed; and that on the other hand it was claimed on the part of the charitable legatees and the said Samuel W. B. Hiss, that their legacies were chargeable to the whole blended fund arising from the sale of both real and personal property, and that therefore their legacies were payable out of the fund in the hands of the executors, before any distribution could be made to the residuary legatees.

The answers to the supplemental bill are printed in the record but no testimony, if any was taken, appears therein.

The Court below by its decree construed the provisions of the will substantially in accordance with the views expressed in the twelfth paragraph of the original bill of complaint, above

referred to. That is the proceeds of the sale of both real and personal property were considered a blended fund for the payments of debts and legacies.

The principal question for this Court to decide is whether the four charitable legacies and the legacy of $2,000 for the benefit of the testator's grandson, Samuel W. B. Hiss, are payable, in whole or in part, out of the proceeds of the sale of the testator's real estate. This inquiry involves the question whether or not it appears by the true construction of the testator's will, that it was his intention that his executors should sell all his real property, in order to carry out the provisions of the will, for, if so then in the eye of a Court of equity his real estate was converted into personality from the time of his death. *Stake* v. *Mobley*, 102 Md. 408.

Now it has been held that equitable conversion is not to be presumed beyond the purposes of the will or further than is necessary to gratify the several legacies and bequests. *Orrick* v. *Boehm*, 49 Md. 72. In determining when and to what extent equitable conversion occurs, the intent of the testator is the guide and this intention must be gathered from the whole will; from a consideration of all its provisions without much regard to the order in which those provisions occur; though in case of an irreconcilable conflict or inconsistency between two clauses the latter will control. *Smithers* v. *Hooper*, 23 Md. 273; *Manning* v. *Thurston*, 59 Md. 218. An examination of the whole will of James Boyce shows as we think an intention on his part, that his whole estate, real and personal, should be converted into money and the common fund thus created, paid out by his executors, as he in his will directed. In an early clause of the will he says "In as much as I shall hereafter give my executors power to sell or lease all my real estate and personal estate, &c. Then in the last clause, after appointing his executors he says "I confer upon my exectors power * * to make sale * * * of my real estate * * * not only for the purpose of paying my debts, but to enable them to make the division into six parts as hereinbefore provided, it being contemplated by

me that they will sell my real estate though not with undue haste."

Here are two expressions of intent, and one of them a clear declaration in the very last clause of his will, that he contemplates a sale of his real estate by his executors.

One of the meanings of the word "contemplate" is "to consider deliberately," and appearing at the very end of his will after the other expressions authorizing the executors to sell his real estate, it may well be taken that it was his deliberate purpose that his real estate should be sold by them. It is not necessary to effect a conversion into personality that there should be an imperative direction to the executors to sell; the intention of the testator may be gathered from the general scope and tenor of his will, and the necessity of a sale in order to carry out its provisions; the conversion arising on the theory that the testator must have intended that everything essential to his scheme should be done.

Such conversions always take place when there is such a blending of real and personal estate by the testator in his will as clearly show that he intended to create a fund out of both real and personal estate and to bequeath the fund as money. *Stake* v. *Mobley, supra.*

Here we have not only the deliberate purpose expressed by the testator that he contemplates that his executors shall sell his real estate, but we find the necessity for doing so in order to gratify the several legacies and bequests.

There is also by the scheme of the will a blending of the proceeds of the sale of both real and personal property in such a manner as to indicate an intention on his part, that such proceeds should be used as a common fund for the payment of debts and legacies.

It is contended however, that the words of the will not being imperative there are other expressions therein which raise a doubt as to the testator's real intention in this regard. And the residuary clause of the will is referred to in which the testator directs that all the residue of his property, "*real* and personal*" shall be divided by his executors into six parts

or shares, the shares being then severally given, *devised* and bequeathed to his children.  The contention being that the use of the word "real" in connection with the word "personal" and the word "devise" in connection with the words "give and bequeath," in this clause, indicate an intention on the part of the testator that his land is to be divided in kind and the parts of it thus divided, allotted or apportioned among his six children.  But this cannot be for in a subsequent clause the testator says "I confer on my executors the power to make sale of my real estate or to lease the same, and to sell the reversions and ground rents,   *   *   not only for the purpose of paying my debts *but to enable them to make the division into six parts as hereinbefore provided*, it being contemplated by me that they will sell all my real estate but not with undue haste."

If there be any repugnancy or inconsistency between these clauses the latter must prevail.   Counsel for the appellants also refer to the fact that the testator makes the payment of the temporary annuity of $800 to his wife, a distinct charge on his land until the sum set apart for her maintenance should be paid to the trustee for her use, and makes no such charge as to these legacies; and it is argued that this difference in phraseology is evidence that he did not intend the charitable legacies to be paid out of his real estate.   But this clause only the more clearly shows the testator's intention to be that his executors should sell all his real estate; for the charge was to continue only until the property should be sold by them.   It was to be a lien only while the process of selling the real estate was going on.   He removed the charge of this temporary annuity as to any land sold by the executors and remitted it to the proceeds of such sale in order that the sale might be made.

All this only shows that the general scheme and plan of the testator's will was that all his property, both real and personal, should be sold by his executors and a common fund created for the payment of his debts and pecuniary bequests; the residue to be divided among his six children as directed in the will.   *Seeger* v. *Leakin*, 76 Md. 500.

Another contention of the appellants was that by the will the sale was to be made only for the two purposes of paying debts and making a division into six parts; and the argument from this seemed to be that therefore the proceeds of the sale of the real estate to the amount of the pecuniary legacies were still impressed with the character of real estate, and should pass to the testator's heirs or devisees. But this could not be for there are no devisees. The land is not devised to any one unless to the executors for the purpose of making sale, and there could be no heirs unless it should be held that this is a case of partial intestacy, which could not be seriously urged. So that in every aspect of the case we can reach but one conclusion, and that is that the testator intended a sale of his real and personal estate by his executors and the blending of the proceeds into one common fund in order to effectuate the purposes of his will. This was manifestly the opinion of Ex-Judge Fisher, who as solicitor for the executors, filed the original bill of complaint, in this case, and is the judgment of the learned Judge in the Court below.

*Decree affirmed with costs.*

Schmucker and Burke, JJ. dissented.