JOHN W. HENRY MILLER *v.* ADOLPH B. HIRSCHMANN ET AL.

[No. 28, January Term, 1936.]

146

*Decided February 19th, 1936.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and SHEHAN, JJ.

*Hartwell M. King* and *Murray MacNabb*, for the appellant.

*Charles F. Stein, Jr.,* with whom were *Henninghausen & Stein* on the brief, for Adolph B. Hirschmann, appellee.

*Albert J. Goodman,* submitting on brief, for Jacob Horowitz, appellee.

PARKE, J., delivered the opinion of the Court.

Jacob H. Miller, a resident of Baltimore, died testate in 1915. After the payment of his debts and funeral expenses and a gift of his household furniture and chattels in his residence to Margaret E. Miller, his surviving wife, he devised and bequeathed all the rest of his real and personal property in trust for the use of his wife for life and for the purpose of accumulation and other uses until her death, whereupon the entire trust estate was to be divided, after charging every one of his seven children with specified sums as advancements, into seven equal parts, and every one of his seven children was to receive one of such equal shares, if living, and the child or children of a deceased son or daughter of the testator to take the share of the parent, and, if any of the testator's children should die before the mother, without leaving a child or children surviving, the share of the one so dying should fall into the corpus to be equally divided for the benefit of the survivors.

The trust was an active one, with the trustees charged to manage, control, and maintain the trust estate, and they were empowered to sell, at either public or private sale, any of the trust property according to their discretion, and they were directed to invest the proceeds of sale for the benefit of the trust. The property of the testator given in trust consisted of real estate, ground rents, leasehold property, and money. Upon the termination of the life estate, the trustees were directed to divide the trust estate into seven equal parts, and to transfer these parts to the seven children, share and share alike, subject to the deduction from every share of the specified advancement made by the testator to every child. For the purpose of making this distribution, the trustees were given the power to sell any or all of the property in trust without first obtaining an order of court. The direction to divide the trust estate into seven equal parts, and that every one of the beneficiaries should receive share and share alike, in a trust where the corpus consisted of improved lots of land, ground rents, leasehold estates for years, and money on deposit, with a power of sale and a direction to reinvest the proceeds, was, as the court reads the testator's intention, an imperative direction to convert for the purpose of distribution; and the land and chattels real which constituted the corpus of the trust will, in equity, be considered as already converted into money before they are converted in fact. So the interest of the remainderman taking under the will is personalty from the death of the testator. *Stake v. Mobley*, 102 Md. 408, 411, 62 A. 963; *Boyce v. Kelso Home*, 107 Md. 190-195-196, 68 A. 550; *Talbott v. Compher*, 136 Md. 95, 100, 101, 110 A. 100; *Read v. Md. General Hospital*, 157 Md. 565, 569-570, 146 A. 742; *Paisley v. Holzshu*, 83 Md. 325, 330, 331, 34 A. 832.

One of the children of the testator, J. W. Henry Miller, executed on March 31st, 1917, to Adolph B. Hirschmann an alleged mortgage deed for the purpose of securing the payment of the sum of $700 according to the tenor of the twelve notes which the mortgagor had executed

and delivered to the mortgagee in that aggregate amount. Every one of the first eleven of these notes was drawn for the sum of $20, with interest, and payable successively at one to eleven months, and the twelfth note of the series was for $480, with interest, and payable twelve months after date. The mortgage purported to grant and convey unto the mortgagee, his heirs and assigns, in fee simple, in these words, "all the interest of the mortgagor in the property to which he is entitled under the will of his father, Jacob H. Miller, whether such property be real estate, leasehold estate or personal estate and whether it be the same property whereof his father died seized and possessed or whether it be the result of conversion or investment thereof; and the said mortgagor hereby directs the testamentary trustees in said will named, their survivors, survivor or successor to pay and deliver unto the said mortgagee all of said above named property without any further order, direction or assent from the said mortgagor." The mortgage then proceeds to state the probate of the will and its place of record. The mortgage deed is of the usual form to convey real estate, and, upon the default of the mortgagor, provides for the passage of a consent decree for a sale of the mortgaged property in accordance with chapter 123, sections 720 to 732, inclusive, of the Acts of 1898, with amendments. Code Pub. Loc. Laws, 1930, vol. 1, art. 4, secs. 720-731.

The mortgage was promptly recorded, and, on the petition of the mortgagee, which was filed on March 20th, 1918, and which showed default on the part of the mortgagor, the Circuit Court of Baltimore City passed that day a decree for the foreclosure of the mortgaged property, and appointed a trustee to make the sale. The trustee did not proceed with the foreclosure, and, pending the proceedings, the mortgagee assigned, on November 4th, 1919, his mortgage claim and deed to a Jacob Horowitz, and the foreclosure proceedings were thereupon entered to the use of the assignee. The mortgagee having no further interest in the suit, the trustee

appointed to foreclose was relieved, and the court substituted another trustee to make the sale. The assignee of mortgagee filed on December 16th, 1919, a statement of his mortgage claim, which embraced the principal debt ($700), interest thereon for 32½ months ($113.75) and three insurance premiums ($101.25), amounting in all to $915.

The substituted trustee filed on December 19th, 1919, a report that, after having given notice by advertisement, he did "attend on the premises and then and there sold to Jacob Horowitz for Twelve Hundred ($1200) Dollars." What he sold is not shown in the report found in the record, although an order *nisi* was passed, and the sale was finally ratified on January 20th, 1920, but nothing further was done in the suit from that time until January 24th, 1935. On this date, the mortgagor filed a petition in the cause assailing the original mortgage as fraudulent, and praying that it be annulled, and that the sale and the subsequent papers and proceedings be avoided. The court required the mortgagee and his assignee to show cause why the relief sought should not be granted. This petition was followed by two amended petitions. The last amended petition was also severally demurred to and answered by the two respondents, but testimony was taken before the chancellor without the last demurrers having been heard. The chancellor dismissed the second amended petition against the two respondents, and the mortgagor appealed.

After reviewing the testimony, in the light of the circumstances, the court is of the opinion that these facts are established: The son and mortgagor, John W. Henry Miller, was in debt and in need of money in March, 1917, and he employed an attorney, Benjamin R. Powell, to secure a loan, which was to be used in part to pay a judgment. The security offered was the son's share in his father's estate. At the time, the son had adult and minor children. Adolph B. Hirschmann, a money lender, agreed to lend $700 on the security offered, after the two adult children had declined to bind their contingent

interests by uniting in the mortgage deed. The mortgagor's testimony is that he executed the mortgage upon the understanding that the instrument would not be operative until his adult children had executed it; and that, when they refused, he believed the transaction had failed as he had never received any part of the mortgage loan, and had no actual knowledge of the recording of the mortgage, and the subsequent foreclosure and sale, until after the death of the life tenant on December 17th, 1934, and the procurement by the assignee and purchaser, Jacob Horowitz, of an order of court that the share of the son in the trust estate be paid to the said assignee and purchaser. The court, however, is convinced by the evidence that the mortgagor is mistaken, and that either he or his attorney, Powell, received the residue of the loan in cash after the then existing judgments against the mortgagor had been satisfied out of the proceeds of the mortgage loan. Furthermore, the record evidence, attested by his own signature and that of Powell as his attorney, makes clear that the mortgagor not only knew that the purporting mortgage was subsisting, but that he had assented to the mortgagee being made a party to the equity cause in which his father's trust estate was in course of administration.

On the facts as found, there is no basis for a decree against the original mortgagee, Adolph B. Hirschmann. No fraud has been established so far as he is concerned. The loan was made on the security of the undivided one-seventh interest of the mortgagor in his father's estate, which was contingent upon the son's surviving the death of the life tenant; and the mortgagee assigned his claim and security before the death of the life tenant. The decree of the chancellor will be affirmed as to Adolph B. Hirschmann.

The assignee, Jacob Horowitz, acquired his title to the mortgagee's claim and alleged lien after the mortgagor's default and the institution of the foreclosure proceedings, but before a sale had been made. At that time the mortgage indebtedness and interest were approximately

$809.25. The assignee paid the mortgagee $700 for this claim, with the additional charge of $101.25 for three premiums for insurance. A little later, the assignee filed a statement of the mortgage claim, and the additional interest to December 16th made a total, including the premiums, of $915. The assignee stood in the shoes of the mortgagee, and, proceeding with the foreclosure, advertised the sale as being "all the one-seventh undivided interest of the 'mortgagor' in the estate of Jacob H. Miller, deceased, recorded in the office of the Register of Wills in Liber H. W. J., No. 122, fol. 109, etc., and described as follows: [Then followed a seriatim description of nine fee simple parcels of land, eight ground rents, three "sub-ground" rents, and six leasehold lots, with the terms of sale and the statement that the one-seventh interests in the properties mentioned would be first offered separately, and then as an entirety and sold to the best advantage.]"

As has been stated, the report of sale does not indicate in what manner the property was offered nor what was sold. It does declare that the sale was on the premises, when it was actually made at the Real Estate Exchange building. The court, after an order *nisi*, ratified the sale, and the papers went to the auditor, but no account was ever stated, and the substituted trustee, Joseph M. Schlessinger, is no longer within the jurisdiction of the court. The assignee paid $500 to the substituted trustee, but the residue of $700 due on account of the purchase money he has not paid.

Without reference to the failure of the report of sale to identify the property sold either by description or by reference, *(Miller's Equity Proc.* sec. 496, p. 582; *Neel v. Hughes,* 10 G. & J. 7, 10), and disregarding other objections as negligible, the absolute title by foreclosure sale of Jacob Horowitz to the interest in remainder of the mortgagor depends upon whether or not the court had jurisdiction to decree a foreclosure by an assent in the instrument at bar.

The sale here attempted was under special statutory

provisions which obtain in Baltimore City for the sale of mortgaged property. The original enactment was limited to real estate, and contained no authority to decree the sale of personal property upon an assent declared in the mortgage. *Bernstein v. Hobelman,* 70 Md. 29, 37, 16 A. 374; *Cronise v. Clark,* 4 Md. Ch. 403, 408. The Act of 1890, ch. 197, amended the statute "so as to include goods and chattels in the decrees for sales by consent." *Miller's Equity Proc.* sec. 474, p. 554.

The language of the amended law is: "In all cases of conveyances of lands or hereditaments or of chattels real, or goods and chattels personal, situate in the said city, wherein the mortgagor shall declare his assent to the passing of a decree for the sale of the same, it shall be lawful for the mortgagee or his assigns at any time after filing the same to be recorded, to submit to either of the Circuit Courts of Baltimore City the said conveyances or copies thereof, under seal of the Superior Court; and the Circuit Court to which the same is so submitted, may thereupon forthwith decree that the mortgaged premises shall be sold at any one of the periods limited in said conveyances for the forfeiture of said mortgages or limited for a default of the mortgagors," etc. Code Pub. Loc. Laws 1930, art 4, sec. 720.

The statute is strictly construed, since the remedy provided is of a summary nature for the benefit of the mortgagee. *Owens v. Graetzel,* 146 Md. 361, 126 A. 224; *Ahrens v. Ijams,* 158 Md. 412, 417-420, 148 A. 816. The meaning of the clause, "In all cases of conveyances of lands or hereditaments or of chattels real, or goods and chattels personal, situate in the said city," is therefore not to be enlarged beyond the limits set by these words when read in connection with their context and the subject-matter of the legislation. When so regarded, "goods" is not so comprehensive a term as "chattels," since it is used to designate inanimate objects, and chattels embraces both animate and inanimate property. Taking the word "chattels," since it is the more general term, its meaning is here limited to chattels personal, and, further,

to those chattels personal situate in Baltimore City. Chattels personal are things moveable, which may be carried about by the owner or with him where he goes. The familiar chattels personal are domestic animals, grain, jewels, household furniture, and everything else movable and transportable with a person. *Co. Litt. 118b; Salabes v. Castelberg,* 98 Md. 645, 651, 652, 57 A. 20. Such chattels personal are within the statute, if, in addition, they are situate in Baltimore City. A general legacy of a share in an estate of personalty contingent upon the legatee's surviving the life tenant is not a chattel personal situate in Baltimore City; and so is not within the statute. The chancellor, therefore, had no jurisdiction to pass the decree, and the purchaser acquired no title under the attempted foreclosure. *Bernstein & Sons. v. Hobelman,* 70 Md. 29, 37, 16 A. 374.

Another reason why the purchaser did not acquire an absolute title is that the alleged mortgagor's interest was a general legacy contingent upon the legatee's survival of the antecedent life estate. As· has been stated at the outset of this opinion, the trust estate of realty and personalty was, in equity, converted into personalty from the death of the testator. So the interest of the legatee in a contingent general legacy of money was not the subject of a mortgage, being neither real estate nor specific goods and chattels personal within the meaning of the conveyancing acts. Code, art. 21, secs. 48, 49; *Lambert v. Morgan,* 110 Md. 1, 72 A. 407; *Talbott v. Compher,* 136 Md. 95, 101, 110 A. 100; *Paisley v. Holzshu,* 83 Md. 325, 34 A. 832; *Early v. Dorsett,* 45 Md. 462; *McKie v. Gregory,* 175 Mass 505, 56 N. E. 720; *Marsh v. Woodbury,* 1 Metc. (Mass.) 436; *Livermore Falls Trust etc. Co. v. Richmond Mfg. Co.,* 108 Me. 206, 79 A. 844; *Emerson v. European etc. R. Co.,* 67 Me. 387; *Woodward v. Laporte,* 70 Vt. 399, 402, 41 A. 443; *Kirkland v. Brune,* 31 Grat. (72 Va.) 126, 131; *Kilbourne v. Fay,* 29 Ohio St. 264.

It follows that the purporting mortgage did not constitute a lien upon the contingent interest of the mortgagor in the estate of his father, and that the defeasible

title of the assignee was not enlarged into an absolute title by the attempted foreclosure sale. *Stake v. Mobley,* 102 Md. 408, 62 A. 963; *Talbott v. Compher,* 136 Md. 95, 99-102, 110 A. 100. The chancellor, therefore, was in error in not declaring that the assignee, Jacob Horowitz, acquired no title by virtue of the foreclosure sale ånd its subsequent ratification. The terms of the purporting mortgage are sufficient, however, to transfer unto Adolph B. Hirschmann, and his assignee, Jacob Horowitz, a defeasible title to all the interest of Miller in the estate of his dead father as a pledge or security for the indebtedness of Miller to Hirschmann and his assignee under the terms of the purporting mortgage, and the document in question is operative as a defeasible assignment, and may be made effective in equity, to the extent of the indebtedness secured, in the distribution of the share of John W. Henry Miller in the trust estate of Jacob H. Miller, subject, however, to any paramount equities. In this manner, a court of equity protects and enforces in the appropriate proceedings the equitable rights and interests of all the parties concerned. *Lambert v. Morgan,* 110 Md. 1, 72 A. 407; *Boland v. Ash,* 145 Md. 465, 125 A. 801; *Pen Mar Co. v. Ashman,* 152 Md. 273, 278, 279, 136 A. 640; *Textor v. Orr,* 86 Md. 392, 398, 399, 38 A. 939; *Goldsborough v. Tinsley,* 138 Md. 411, 418, 419, 113 A. 861; *Union Trust Co. v. Biggs,* 153 Md. 50, 60, 61, 137 A. 509; *In re Clarke,* L. R. 36 Ch. Div. 348.

The dismissal of the petition of J. W. Henry Miller against Jacob Horowitz was error, and to that extent the decree dismissing the second amended petition must be reversed, and the cause remanded for a decree declaring that the foreclosure sale to Jacob Horowitz, and the final order of court ratifying the same, are of no effect and void, and that Adolph B. Hirschmann and Jacob Horowitz, his assignee, acquired successively under the purporting mortgage of John W. Henry Miller a defeasible assignment of the interest of John W. Henry Miller in the estate of his dead father, Jacob H. Miller, as a pledge or security for the payment of the indebtedness intended

to be secured by the purporting mortgage of the said John W. Henry Miller to the said Adolph B. Hirschmann, and by the latter assigned to Jacob Horowitz; and further enforcing, as may be found requisite, this opinion.

*Decree reversed in part and affirmed in part, with costs to be paid by Jacob Horowitz, appellee, and cause remanded for a decree in conformity with this opinion and for further proceedings.*