## SAFE DEPOSIT & TRUST COMPANY ET AL. *v.* BALTIMORE-GILLET COMPANY

[No. 31, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, MITCHELL, SHEHAN, and DELPLAINE, JJ.

*Douglas H. Gordon,* with whom were *Brune & Gordon* on the brief, for the appellants.

*G. Ridgly Sappington,* with whom was *D. Heyward Hamilton, Jr.,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellees' assignor, after purchasing from the appellants a tract of land in the suburbs of Baltimore City, giving the appellants a mortgage for part of the purchase price, made a contract with the City for the extension of water mains under streets to be opened on the tract, upon a deposit with the City of $8370; and there was a stipulation for allowance of credits or refunds as dwelling houses should be built subsequently to connect with the mains, and service charges for the con-

nections should be paid. These credits have accumulated, but meanwhile the mortgage has been foreclosed and the property bought in by the mortgagees. And the question is: To whom should the credits or refunds be paid, the assignee of the original purchaser, who paid in the amount on which the refunds have been allowed, or to the present owners under their purchase at the foreclosure sale? The fund has been claimed by both, and the City brought a bill of interpleader in equity for determination of the controversy. The present appellants were designated plaintiffs in the suit. Upon a hearing on the bill, answer, and testimony taken, the chancellor concluded and decreed that the defendant, assignee of the original purchaser who paid in the money to be refunded, was entitled. This court concurs.

The contract for laying the mains was in a letter of application, duly accepted, but not acknowledged or recorded as an instrument affecting title to land. It required a deposit of $1.50 for each 5580 feet of extensions made in the streets of the projected development of the tract, and the provision for credits and refunds followed immediately. "On any application," read the letter, "for water service and requiring an extension of a water main inside the corporate limits of the City of Baltimore will require a deposit, which will not bear interest, of $1.50 per linear foot of extension applied for and to be laid to a point opposite the last building applying for water. A credit or refund will be allowed of $100 for each dwelling where the lot abuts on the street in which the main is laid, and where the owner has made application and payment for the service pipe and the house is under roof. $100 will also be allowed for each $20 of water rent per annum where the same conditions obtain on business properties.

"Refunds on permanent connections will be made at the end of each calendar quarter of the year, provided the Bureau of Water Supply has been requested in writing to do so 30 days in advance of the expiration of such quarter and such a refund is found by inspection to be

in order, but from and after ten years following date of payment to the City of the deposit, the City will not nor shall it be required to refund any part or amount of the deposit which shall remain unrefunded, nor shall any depositor have or be entitled to make any claim or demand upon the City for any such unrefunded deposit or balance of any deposit."

The City's acceptance was evidenced by a short statement of the fact, with an acknowledgment of receipt of the money deposited, under the signature of an agent of the water engineer.

In pursuance of the agreement, the City paid the mortgagor $500 in refunds, and a total sum of $2600 has since become payable, and has been credited and deposited in court awaiting the decree.

The contract was drafted without any express reference to the possibility of change in ownership of the land, and the change made has brought it about that the refunds must be earned under the contract by development of the property in the hands of another. Nevertheless the agreement was in terms one to refund money paid in by the original purchaser, and not one to pay to the owner whoever it might be. To support a right in the appellants, a transfer of the appellee's right under the contract must be found. And the appellants contend, first that the right was included in the appurtenances of the security of the mortgage sold to them on the foreclosure. The clause of the mortgage to which this refers is a usual one: "Together with the buildings and improvements thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging or in any wise appertaining." And whatever latitude of meaning might have to be allowed to the words in informal wills and other instruments, as in cases cited, we see no sufficient ground for extending it in this instance beyond the ordinary meaning of incidents of the land. *Williams v. Baker,* 41 Md. 523, 528. The mortgage is a carefully prepared, technical instrument, and technical words in a deed or any other such

formal instrument are appropriately given their technical meaning. *Maryland Coal Co. v. Cumberland & P. R. Co.*, 41 Md. 343, 352. Besides, taking the words of the contract to refund at their ordinary meaning, they seem to signify only that money paid shall be paid back, and that the payor should receive it. It was to be a "deposit which will not bear interest," any remainder of which after ten years was not to be claimed by any depositor. The contract was, in the opinion of the court, one with the payor, separated from and independent of the land. The money was advanced, and repayment was to restore it in part. At the time of execution of the mortgage the right to the refund was only a chose in action for money, not an interest in land or its incidents, while the mortgage was a conveyance of right, title, and interest in land. And the mortgage would not include the chose in action. *Early v. Dorsett*, 45 Md. 462, 466; *Miller v. Hirschmann*, 170 Md. 145, 154, 183 A. 259. It did not, as in *Stockett v. Howard*, 34 Md. 121, represent any part of the realty converted into cash.

A claim that the refunds are included under a pledge of rents and profits, contained in the mortgage, must be similarly answered. These are to be derived from the land, and the refunds are not; they are returns of money advanced.

Substantially the same argument is one that the contract constituted in effect a covenant by which the benefit would run with the land under the mortgage. In the first place, the letter and its acceptance by the City, unsealed as they were, did not contain any covenant at all, to pass with the land. *Dawson v. Western Md. R. Co.*, 107 Md. 70, 86, 68 A. 301. And if there were no such insufficiency in form, it still had nothing to do with the quality, value or mode of enjoyment of the estate conveyed, which would make it run with the land; it did not touch and concern the land, or tend to enhance its value or render it more convenient or beneficial to the owners. *Glenn v. Canby*, 24 Md. 127, 131; *Whalen v. Balto. & O. R. Co.*, 108 Md. 11, 20, 69 A. 390. There is

no negative easement or restriction of use such as equity enforces for the benefit of a purchaser. *Peabody Heights Co. v. Willson,* 82 Md. 186, 32 A. 386, 1077. There is no effect on the land or its enjoyment to bring the case under that principle.

The accumulated fund is therefore found to belong to the appellee. In cases in other jurisdictions on the right of a previous owner of land to refunds of taxes and other charges paid by him, the courts appear to have been of opinion that when there has been no designation of the present owner as the one to receive payment, the payor is entitled. See annotation 105 *A. L. R.* 698.

*Decree affirmed, with costs.*